UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN L. RAY,                          )
                                      )
        *Plaintiff,*                  )
                                      )
    v.                                )        Case No. 19-cv-2841-RCL
                                      )
CLH NEW YORK AVE, LLC, *et al.*,      )
                                      )
        *Defendants.*                 )
                                      )

CLH NEW YORK AVE, LLC, *et al.*,      )
                                      )
        *Counterclaim Plaintiffs,*    )
                                      )
    v.                                )        Case No. 19-cv-2841-RCL
                                      )
JOHN L. RAY,                          )
                                      )
        *Counterclaim Defendant.*     )
                                      )

## **MEMORANDUM OPINION**

This matter comes before the Court on the following motions: (1) Defendants' Motion for Leave to File an Amended Answer, Affirmative Defenses, and First Amended Counterclaim [ECF No. 42]; (2) Plaintiff's Motion for Leave to file a Third Amended Complaint[1] [ECF Nos. 45 & 49]; (3) Plaintiff's Emergency Motion for an Extension of Time to Complete Discovery [ECF No. 47]; (4) Plaintiff's Motion to Compel and for a Status Hearing [ECF No. 50]; (5) Plaintiff's

---

[1] Plaintiff first moved for leave to file a Second Amended Complaint on July 7, 2020. ECF No. 45. Approximately two weeks later, plaintiff filed a Notice "substitut[ing]" Exhibit 1 of his Motion for Leave to File a Second Amended Complaint (which was the Second Amended Complaint) with a revised complaint that added a count for breach of partnership loyalty. ECF No. 49. Because plaintiff's Notice [ECF No. 49] added a new claim, the Court will construe ECF Nos. 45 & 49 together as a Motion for Leave to File a Third Amended Complaint.

Supplemental Motion to Compel [ECF No. 52]; (6) Defendants' Motion for Summary Judgment [ECF No. 59]; and (7) Defendants' Motion to Quash Plaintiff's Subpoena to Paul H. Wilner, CPA [ECF No. 60].

After considering the parties' motions, supplemental filings, oppositions, and replies, the Court will grant both parties leave to amend their pleadings. The Court will also order defendants to produce (1) the Operating Agreement for CLH New York Ave, LLC and any corporate minutes and electronic correspondence related thereto, and (2) redacted versions of CLH New York Ave, LLC's state and federal tax returns from 2014 and 2015. As plaintiff has withdrawn his subpoena to Paul H. Wilner, defendants' Motion to Quash the Subpoena [ECF No. 60] will be denied as moot. Finally, because the Court will authorize additional discovery, defendants' Motion for Summary Judgment [ECF No. 59] will be denied as premature.

## BACKGROUND

### A.   Factual Allegations[2]

The events leading up to this suit began in early 2012, when plaintiff John L. Ray allegedly brought a lucrative real estate opportunity to defendant Wilton Lash's attention. ECF No. 49-1 ¶¶ 9–15. At the time, the property located at 1345 New York Ave, NE in Washington, D.C. ("the Property") collected $700,000 annually in rent from the D.C. Public School System, which used the property to park its unused school buses. *Id.* at ¶ 10. After learning that the Property was on the market, plaintiff conducted due diligence to determine whether the Property could be used as a bus depot for tour buses. *Id.* at ¶ 11. He learned that it could. *Id.* at ¶ 13.

---

[2] The following facts are taken from plaintiff's Third Amended Complaint [ECF No. 49-1]. As the Court will grant plaintiff leave to file the document at ECF No. 49-1 as his Third Amended Complaint, *see infra* Part I.B., the Third Amended Complaint is now the operative complaint.

Plaintiff then brought the opportunity to defendant Lash—a financially capable businessperson and acquaintance of plaintiff's—and explained that the Property could be used as a bus depot for tour buses. ECF No. 49-1 ¶ 14. When the two visited the Property in February 2012, plaintiff claims that Lash offered him a "sweat equity" compensation of 10% "equity interest in the property and any improvements thereon" for conducting due diligence and bringing Lash the opportunity. *Id.* at ¶ 18.

After having several phone conversations about the Property, plaintiff and Lash met for dinner in March 2012 to finalize their agreement. ECF No. 49-1 ¶ 19. At dinner, plaintiff claims that Lash confirmed that plaintiff would receive 10% "equity interest in the property and any improvements thereon" subject to the D.C. Public School System maintaining its lease for five years. *Id.* at ¶¶ 16–18. Plaintiff offered to memorialize the deal in writing, but Lash said he first needed to speak with "someone." *Id.* at ¶ 19.

That someone was defendant Richard Cohen. ECF No. 49-1 ¶ 19. Around the time that plaintiff and Lash met for dinner to finalize the agreement, Lash had been communicating with Cohen about purchasing the Property. *Id.* When plaintiff called Cohen to discuss his agreement with Lash, Cohen responded that he was "100% on board." *Id.* at ¶ 22. Along with a third partner, Donnie Hinton, Lash and Cohen then formed CLH New York Ave, LLC ("CLH") for the purpose of purchasing the Property. *Id.* at ¶ 23. In March 2013, CLH purchased the Property. *Id.* at ¶ 24.

From the time the parties allegedly made the oral agreement in 2012 until plaintiff filed this suit in 2019, plaintiff repeatedly asked defendants to memorialize the parties' agreement in writing. ECF No. 49-1 ¶¶ 27–56. Though defendants twice sent plaintiff a proposed agreement, once in 2015 and again in 2019, plaintiff rejected both documents as wholly inconsistent with the terms of their original deal. *Id.* at ¶¶ 39–41, 56. No document was ever signed. *See id.*

3

Though the parties never signed a written agreement, CLH at one point advanced plaintiff $90,000 on his share in the Property. ECF No. 49-1 ¶ 63. And in 2016, CLH loaned plaintiff $30,000, which was to be repaid upon the sale of the Property or by July 2018, whichever happened first. *Id.*

## B.    Procedural History

Seven years after the parties allegedly entered into an oral agreement, and with no signed document in hand, plaintiff sued CLH, Lash, Cohen, and Hinton in the Superior Court of the District of Columbia to enforce the deal. ECF No. 1-1. The Complaint brought counts for breach of contract, fraud, unjust enrichment, and quantum meruit. *Id.* Plaintiff also filed a *lis pendens* on the Property with the District of Columbia Recorder of Deeds. *See* ECF No. 9 at 13.

After removing the case to federal court based on diversity jurisdiction, ECF No. 1, defendants answered the Complaint by denying that they ever agreed to give plaintiff a 10% equity share in the Property. ECF No. 9 at 3. Defendants also counterclaimed, seeking a release of the *lis pendens*. ECF No. 9 at 12–17. Both parties moved to dismiss the claims against them, ECF Nos. 4 & 19, and the Court denied both motions, ECF Nos. 10 & 34. In December 2019, the Court issued a scheduling order setting the close of fact discovery for June 12, 2020. ECF No. 21.

Discovery has not gone smoothly. On June 29, 2020, the Court granted a consent motion to extend the deadline for fact discovery to July 24, 2020. ECF No. 41. Shortly thereafter, both parties moved for leave to amend their pleadings. First, on July 4, 2020, defendants sought to add new information about the nature of the agreement to their Counterclaim. *See* ECF No. 42-3 at 14–17. Rather than denying that they made an agreement with plaintiff, as defendants did in their first Answer and Counterclaim, defendants' Amended Counterclaim alleged that in 2012, Lash and Cohen "were willing to provide [plaintiff] a 10% profits interest in the Property if [plaintiff]

4

delivered on [his] promises" to (1) secure legislation that would require tour buses to park at a depot on the Property, (2) ensure that a street-car stop would be added at the Property, (3) get D.C. to allow for additional floor-to-area ratio for the Property, and (4) secure "other value enhancing aspects for the Property." *Id.* at 15.

Plaintiff also sought leave to file a Second Amended Complaint with four new claims: breach of the covenant of good faith and fair dealing, common law fraud, civil conspiracy, and promissory estoppel. *Compare* ECF No. 6-1, *with* ECF No. 49-1. Plaintiff then filed a Notice that "substitute[d]" Exhibit 1 of his Motion for Leave to File a Second Amended Complaint (which was the Second Amended Complaint) with a Third Amended Complaint that added a count for breach of partnership loyalty. ECF Nos. 49 & 49-1.

On July 20, 2020, four days before the scheduled close of discovery, plaintiff filed an Emergency Motion for an Extension of Time to Complete Discovery. ECF No. 47. In his Motion, plaintiff claimed that defendants' "newly minted" "profits-interest theory" in their Amended Counterclaim prejudiced him by "partially reshap[ing]" discovery. *Id.* at 7. Plaintiff also claimed that he was prejudiced by defendants' late production of a document supporting their profits-interest theory (CLH0001703) on July 7, 2020. *Id.* at 5. In light of defendants' actions, plaintiff asked the Court to enlarge discovery by twenty-one days. *Id.* at 16.

The next day, plaintiff filed a Motion to Compel, explaining that although the parties met and conferred on July 17, 2020, defendants were unwilling to comply with his requests. ECF No. 50 at 2. Plaintiff's Motion to Compel requests answers or documents in response to the following: (1) Interrogatory 4, (2) Request for Production of Documents Nos. 2, 5, 8, 17, 20, and (3) Request for Admission Nos. 7 & 16(b)–(c). ECF No. 50 at 6. Ten days later, plaintiff filed a Supplemental

Motion to Compel, ECF No. 52, where he added Request for Production of Documents No. 9 to that list.

Defendants opposed plaintiff's Motions to Compel, arguing that plaintiff's own dilatory tactics prevented him from completing discovery on time. *See generally* ECF No. 53. Defendants also moved for summary judgment, ECF No. 59, and filed a Motion to Quash Plaintiff's Subpoena to Paul H. Wilner, defendants' accountant. ECF No. 60. Plaintiff later withdrew the subpoena. *See* ECF No. 65 at 10.

Each of these motions is now ripe and ready for the Court to consider.

## DISCUSSION

**I.     The Court Will Grant Both Parties' Motions to Amend their Pleadings**

### A.     Defendants' Motion

On July 4, 2020, defendants moved for leave to file an Amended Answer, Affirmative Defenses, and First Amended Counterclaim. ECF No. 42. Plaintiff did not oppose the Motion. Although defendants' Amended Counterclaim introduces a new theory of the parties' agreement less than one month before the close of discovery, the Court finds that allowing this amendment would not be unjust. *See* Fed. R. Civ. P. 15(a)(2). To even the playing field, and as explained below, the Court will also grant plaintiff's Motion to File a Third Amended Complaint, ECF Nos. 45 & 49. Additionally, the Court will extend the deadline for fact discovery, which will give plaintiff ample time to obtain information relevant to defendants' new theory of the case.

### B.     Plaintiff's Motion

Three days after defendants moved to amend their pleadings, plaintiff also moved for leave to file a Second Amended Complaint. ECF No. 45. He sought to add claims for breach of the covenant of good faith and fair dealing, common law fraud, civil conspiracy, and promissory

estoppel. *Compare* ECF No. 6-1, *with* ECF No. 49-1. Plaintiff later supplemented his proposed Second Amended Complaint with a Notice that added a claim for breach of partnership loyalty to his Second Amended Complaint. *See* ECF Nos. 49 & 49-1.

Defendants opposed plaintiff's Motion, arguing that the Court should not allow plaintiff to add new claims at the eleventh hour before the close of fact discovery. ECF No. 57. Yet defendants did just this when they moved to amend their Counterclaim three days earlier. *See* ECF No. 42. Thus, in the interest of justice, the Court will grant plaintiff leave to file the document at ECF No. 49-1 as his Third Amended Complaint. Accordingly, the Court will deny plaintiff's Motion for Leave to File a Second Amended Complaint [ECF No. 45] as moot.

## II.   The Court Will Deny Defendants' Motion to Quash Plaintiff's Subpoena to Defendants' Accountant

On July 28, 2020, plaintiff served a subpoena for documents on third-party Paul H. Wilner, the accountant who provided tax services and advice to defendants related to the Property. *See* ECF Nos. 60 & 60-1. Defendants moved to quash the subpoena as untimely. *Id.* In plaintiff's opposition to defendants' Motion to Quash, plaintiff conceded that the Motion was untimely and withdrew it. ECF No. 65 at 10. Instead, plaintiff asks the Court to allow him to take an "unrestricted deposition" of Mr. Wilner. *Id.*

Because plaintiff withdrew the subpoena, the Court will deny defendants' Motion to Quash as moot. Should plaintiff wish to re-depose Mr. Wilner, he must serve a new subpoena that seeks deposition testimony. As his initial subpoena sought only documents, the Court will not permit plaintiff to bypass the ordinary procedure for this new discovery request. *See* ECF No. 60-3.

### III.   The Court Will Grant in Part and Deny in Part Plaintiff's Motion to Compel

#### A.   Legal Standard

Under Federal Rule of Civil Procedure 26(b)(1), a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." In the context of discovery, relevance is construed broadly. *Food Lion, Inc. v. United Food & Commercial Workers Intern. Union, AFL-CIO-CLC, et al.*, 103 F.3d 1007, 1012 (D.C. Cir. 1997). The Court may limit discovery, however, if the information sought is unreasonably duplicative, privileged, or can be obtained from a more convenient and less burdensome source. Fed. R. Civ. P. 26(b)(2)(C).

If a party does not respond to a proper discovery request—and tries but fails to resolve the dispute without judicial intervention—the party seeking discovery can file a motion to compel. Fed. R. Civ. P. 37(a)(1). When evaluating a motion to compel, courts consider the parties' efforts to resolve the dispute, the relevance of the information sought, and whether the information sought is unreasonably duplicative or can be obtained from some other, more convenient source. *Barnes v. District of Columbia*, 289 F.R.D. 1, 5–6 (D.D.C. 2012). The party seeking discovery bears the burden of proving that a discovery response is inadequate. *Id.* at 6.

In his Motion to Compel and Supplemental Motion to Compel, plaintiff lists nine discovery requests that he believes defendants have not adequately answered. ECF Nos. 50 at 6 & 52 at 4. The Court will address each in turn.

#### B.   Interrogatory No. 4

Plaintiff first requests an answer to Interrogatory No. 4, which reads: "Identify any and all formal and/or informal CLH meetings, conference calls, email exchanges and/or other forms of communication that took place pertaining to, involving, referencing or discussing plaintiff's claims

8

herein." ECF No. 50 at 6. Defendants objected to this Interrogatory as unduly burdensome, vague, and requesting information protected by the attorney-client privilege. ECF No. 50-1 at 18. Plaintiff then clarified the request as seeking to identify:

> [A]ny and all meetings in which [plaintiff's] claimed equity was discussed prior to this lawsuit's filing, which means any face to face meetings and/or telephonic conference calls of CLH principals, managers, members, or consultants which relate to the question of CLH's payments, advances, or loans to [plaintiff] in any respect.

ECF No. 50-1 at 84.

Defendants responded that "they are unaware of any CLH meetings pertaining to, involving, referencing or discussing plaintiff's claims herein, as none were required." ECF No. 50-1 at 19. Accordingly, defendants explained, "there are no minutes which were taken and recorded in connection with any CLH meeting." *Id.*

As the party compelling discovery, plaintiff bears the burden of showing that defendants' response is inadequate. *Barnes*, 289 F.R.D. at 6. In his Motion to Compel, plaintiff simply lists Interrogatory No. 4 as not being fully answered yet provides no reason for the Court to believe defendants are withholding relevant, non-privileged information. *See* ECF No. 50 at 6. Without more, plaintiff's conclusory accusation is insufficient to support his Motion. The Court will thus deny plaintiff's Motion to Compel with respect to Interrogatory No. 4.

### C.   Request for Production No. 2

Plaintiff also seeks to compel defendants to produce a "[c]opy of Defendants' Operating Agreement, and any and all corporate minutes and electronic correspondence related thereto." ECF No. 50 at 6. In response, defendants objected to the request as vague and ambiguous, overly broad, and irrelevant. ECF No. 53-17 at 4. After plaintiff's counsel again requested this information, defendants further explained that the request is irrelevant to plaintiff's suit because plaintiff does

not claim to have an ownership interest in CLH. ECF No. 53-18 at 6. Defendants thus refused to produce any documents in response. *See* ECF No. 52-1 at 17.

Indeed, at that time, plaintiff did not claim to have an ownership interest in CLH. *See* ECF No. 6. But when plaintiff moved for leave to file his Third Amended Complaint, he added an allegation that he "contributed significant time and services to the partnership with Lash, Cohen, and CLH with the intention of holding an *interest in the partnership entity* that would own the Property." ECF No. 49-1 at 16 (emphasis added). To be sure, plaintiff also repeatedly alleges that defendants agreed to give him a 10% "equity interest *in the property* plus any improvements thereon." *See, e.g.*, ECF No. 49-1 at 4, 13 & 14 (emphasis added).

Eventually, plaintiff will have to decide which theory of the case to pursue. But at the discovery stage, the allegation that he contributed his services to defendants with the understanding that he would hold an "interest in the partnership entity that would own the Property" makes CLH's Operating Agreement relevant to plaintiff's claims.[3] Thus, because CLH's Operating Agreement is relevant to Plaintiff's claims, and because the parties met and conferred before plaintiff filed his Motion to Compel, ECF No. 50 at 2, the Court will grant plaintiff's Motion to Compel CLH's Operating Agreement and any corporate minutes and electronic correspondence related thereto (Request for Production No. 2).

D.     Request for Production No. 8

Next, plaintiff requests "[c]opies of any and all emails between Mr. Lash and Mr. Cohen related to the purchase of the property, the formation of the LLC and Mr. Lash's ownership interest in the LLC." ECF No. 50 at 6. Plaintiff later narrowed this request to include only those emails

---

[3] Although plaintiff's Request for Production No. 2 does not define the term "Defendant," plaintiff's counsel later clarified in a letter to defendants' counsel that the request asks for defendant CLH's Operating Agreement. ECF No. 50-1.

exchanged between February and April 2012. *Id.* After objecting to this request as vague, not proportional to the needs of the case, and irrelevant, defendants refused to produce any documents. ECF No. 53-17 at 7. Plaintiff's counsel again asked for documents responding to Request for Production No. 8, ECF No. 50-1 at 96, and defendants again objected barring further clarification. ECF No. 53-18 at 7.

The Court will deny plaintiff's Motion to Compel with respect to Request for Production No. 8, as this request is largely duplicative of two other requests that defendants fully responded to: Requests for Production Nos. 1 and 4. First, Request for Production No. 1 seeks:

> Copies of any and all documents, corporate records, tax returns, and correspondence in your possession related to, pertaining to, referencing, or discussing Plaintiff in any way including but not limited to his involvement with the identification, vetting, survey, proposals, contracting, pitching, or presenting any other aspects of the acquisition and/or development of the Property.

ECF No. 53-7 at 8.

Defendants turned over upwards of one hundred seventy emails in response to Request for Production No. 1, ECF No. 52-1 at 12–16, and plaintiff does not claim that defendants' response was inadequate.

Similarly, Request for Production No. 4 asks for "[c]opies of any and all email and text correspondence, including correspondence exchanged by any LLC member with any other LLC member which expressly references the plaintiff's name or proposed compensation." ECF No. 53-7 at 9. Defendants produced more than one hundred thirty emails in response to this request. *See* ECF No. 52-1 at 17–21. Again, plaintiff does not argue that this response was inadequate.

The relevant information sought in Request for Production No. 8 has thus already been produced. Though relevance in the context of discovery is broad, *Abt v. Jewell*, 303 F.R.D. 166, 168 (D.D.C. 2014), the Court finds that any emails between defendants Lash and Cohen relating to the purchase of the property, the formation of the LLC, or Lash's ownership interest that *do not*

reference, discuss, or pertain to plaintiff in any way are not relevant to plaintiff's case. The Court will thus deny plaintiff's Motion to Compel with respect to Request for Production No. 8.

      E.     <u>Request for Production No. 17</u>

Plaintiff also seeks to compel defendants to produce "[a]ll records, including electronic calendars, cellphone records, telephone logs, corporate minutes, emails, and notes of telephone calls or conversations about, or with Plaintiff related to (1) CLH's purchase of the property, and (2) any proposed compensation arrangement by CLH to [Plaintiff]." ECF No. 50 at 6. Plaintiff later narrowed his request for phone records to include only the cellphone records of defendants Lash and Cohen from March to April 2012. *Id.* Although defendants initially objected to the request as overbroad and unduly burdensome, ECF No. 53-17 at 11, they eventually produced thirteen documents that they identified as responsive and non-privileged. ECF Nos. 53-17 at 11 & 52-1 at 34.

In plaintiff's Motion to Compel, plaintiff simply asserts that defendants did not adequately respond to Request for Production No. 17. *See* ECF No. 50 at 6. Without more, plaintiff's conclusory assertion that defendants must have more information to turn over is not enough to support his Motion to Compel.

Furthermore, like plaintiff's Request for Production No. 8, Request No. 17 is unreasonably duplicative of plaintiff's Request for Production Nos. 1 and 4. Defendants have already produced all documents, corporate records, and correspondence "related to, pertaining to, referencing, or discussing Plaintiff in any way," as well as "[c]opies of any and all email . . . correspondence . . . which explicitly references the Plaintiff's . . . proposed compensation." ECF No. 52-1 at 12 & 17. Any documents, corporate records, or correspondence that *do not* involve plaintiff in any way are not relevant to his claims.

Finally, though Requests for Productions Nos. 1 and 4 did not ask for defendants' phone records, the Court finds that the information sought from defendants' phone records can be (and has been) discovered in a less burdensome, more convenient way. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). In their depositions and in response to written discovery requests, defendants Lash and Cohen admitted that they spoke on the phone in 2012 about the Property. ECF No. 53 at 16. With these admissions, defendants' phone records will simply confirm what plaintiff already knows. Accordingly, the Court will deny plaintiff's Motion to Compel with respect to Request for Production No. 17.

      F.      <u>Request for Production No. 20</u>

Next, plaintiff moves to compel defendants to produce "[a]ny and all documents related to the sale of any previous member's interest, including Mr. Lash; all correspondence and written agreements related to that prior sale [t]hereto, and all corresponding related transaction documents." ECF No. 50 at 6. As the Court will grant plaintiff's Motion to Compel with respect to CLH's Operating Agreement and any relating correspondences (Request for Production No. 2), it finds Request for Production No. 20 to be unreasonably duplicative. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). Additionally, all CLH documents referencing plaintiff were produced in response to Request for Production Nos. 1 and 4. *See* ECF No. 52-1 at 12–16 & 17–21. The Court will thus deny plaintiff's Motion to Compel with respect to Request for Production No. 20.

      G.      <u>Request for Production No. 9</u>

          *i.*      *Information Requested & Objections*

Plaintiff's Supplemental Motion to Compel requests "[c]opies of any and all correspondence (including emails) or documents transmitted by you to your accountant in which you referenced in any respect whatsoever Plaintiff's name and/or any proposed compensation to

him; this includes loans and advances for [Plaintiff]." ECF No. 52 at 4. Defendants initially

objected to this response as "vague, ambiguous, and potentially seek[ing] discovery of privileged

information." ECF No. 53-17. Later, on July 22, 2020, defendants asserted the accountant-client

privilege under Maryland law, provided a privilege and redaction log, and produced three

documents in response to the request. ECF Nos. 70 at 6 & 52-1 at 23; *see* Fed. R. Civ. P. 26(b)(5).

*ii.   Relevance*

Defendants urge the Court not to address the question of whether defendants properly

invoked the accountant-client privilege under Maryland law. ECF No. 70 at 5. Even if the

communications were not privileged, they argue, the documents plaintiff seeks from Mr. Wilner

are irrelevant and not proportional to the needs of the case. *Id.*; *see* ECF No. 60-1 at 8–10.

The Court disagrees. Plaintiff claims that defendants agreed to give him a 10% "equity

interest in the Property and any improvements thereon." ECF No. 49-1 at 4. Accountant Wilner

was the official tax return preparer for defendants and provided tax services and advice to

defendants related to the Property. ECF No. 60-5. If defendants did in fact intend to give plaintiff

a 10% equity interest in the Property, they likely communicated this plan to Mr. Wilner while

discussing the tax implications of the acquisition. Thus, because the information plaintiff seeks in

Request for Production No. 9 is relevant and proportional to the needs of his case, the Court must

decide whether defendants properly invoked Maryland's accountant-client privilege.

*iii.   Accountant-Client Privilege*

Because defendants removed this matter to federal court from the Superior Court for the

District of Columbia, *see* ECF No. 1-1, this Court must step into the shoes of the D.C. court to

decide whether defendants properly invoked Maryland's accountant-client privilege. *Erie R. Co.*

*v. Tompkins*, 304 U.S. 64, 78 (1938). That question requires a choice of law analysis: would the

14

D.C. court have applied D.C. or Maryland privilege law? *See In re Sealed Case (Medical Records)*, 381 F.3d 1205, 1212 (D.C. Cir. 2004) (holding that state privilege law governs in diversity suits). Since D.C. was the forum, its choice-of-law rules govern that analysis. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

Under D.C.'s choice-of-law rules, the Court must first decide whether a true conflict exists between the substantive laws of D.C. and Maryland. *In re APA Assessment Fee Litig.*, 766 F.3d 39, 51–52 (D.C. Cir. 2014). Doing so requires the Court to characterize the nature of the dispute. *See In re Estate of Delaney*, 819 A.2d 968, 988 (D.C. 2003). Although plaintiff sued for breach of contract, and although this suit involves real property, the crux of the dispute in plaintiff's Request for Production No. 9 is whether defendants may invoke the accountant-client privilege. Thus, the Court must decide whether there is a true conflict between D.C. and Maryland law on the accountant-client privilege.

The answer to this question is a clear "yes": Maryland recognizes an accountant-client privilege, but D.C. does not. *See* Md. Ann. Code § 9-110; *Kuhn & Kogan, Chtd. v. Jeffrey C. Mensh & Assocs.*, 77 F. Supp. 2d 52, 54 (D.D.C. 1999); *see also* D.C. Ann. Code § 14–307. The District of Columbia Court of Appeals has yet to decide a conflicts-of-law question involving an evidentiary privilege. However, when faced with conflicts in other areas of substantive law, D.C. courts have consistently applied a modified governmental interest analysis. *See, e.g., Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*, 68 A.3d 697, 714 (D.C. 2013). To determine which state has the "most significant relationship" to the dispute, *id.*, D.C. courts often draw from principles in the Restatement (Second) of Conflicts. *See District of Columbia v. Coleman*, 667 A.2d 811, 816 (D.C. 1995) (conflict involving tort law); *Washkoviak v. Student Loan Marketing Ass'n*, 900 A.2d 168, 180 (D.C. 2006) (conflict involving common law fraud).

Given this approach in analogous cases, the Court predicts that D.C. courts would likewise apply a modified governmental interest analysis—informed by the Restatement (Second) of Conflicts—to resolve a choice-of-law question involving an evidentiary privilege. Under Restatement (Second) of Conflicts § 139(2):

> Evidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged under local law of the forum will be admitted unless there is some special reason why the forum policy favoring admission should not be given effect.

Our first task, then, is to decide whether D.C. or Maryland has a more significant relationship with the communications between Mr. Wilner (the accountant) and defendants (the clients).

Here, Maryland has the more significant relationship. D.C. has only one relevant contact to the communications: defendants and Mr. Wilner's correspondence involved property located in D.C. ECF No. 1-1 ¶ 7. But although the *subject* of the communications is property located in D.C., Maryland has a significant relationship to both *parties* to the communications. Mr. Wilner practices at a Maryland-based accounting firm and advised defendants from his Maryland office. ECF No. 60-1 at 11. Likewise, defendants CLH,[4] Cohen, and Hinton are all citizens of Maryland. ECF No. 1 ¶¶ 12–13.

Maryland's relationship to the parties is especially important given the nature of the privilege asserted. The purpose of the accountant-client privilege is to "encourage free and open communication between the accountant and the client." *Sears, Roebuck & Co. v. Gussin*, 714 A.2d 188, 193 (Md. 1998). When it applies, the privilege attaches to the client. *Kuhn*, 77 F. Supp. 2d at

---

[4] As an LLC, CLH's citizenship is determined by the citizenship of its members. *CostCommand, LLC v. WH Adm'rs, Inc.*, 820 F.3d 19, 21 (D.C. Cir. 2016). According to defendants, CLH's members are citizens of Maryland, New York, Colorado, and California. ECF No. 1 ¶ 15. In his Third Amended Complaint, plaintiff alleges that CLH's members are citizens of Maryland, New York, Colorado, California, *and* Florida. ECF No. 49-1 ¶ 7. The Court need not decide which account is correct, as the parties agree that CLH has at least one Maryland-citizen member. CLH is thus a citizen of Maryland. *CostCommand, LLC*, 820 F.3d at 21.

54. Thus, the forum where the client resides "has a strong interest in having its law govern the accountant-client relationship." *Id.* So although Mr. Wilner and defendants discussed property located in D.C., Maryland's relationship to the parties leads this Court to predict that a D.C. court would find Maryland's relationship to the communications more significant than D.C.'s.

Since Maryland has the more significant relationship with the communications, and since Maryland recognizes an accountant-client privilege, Restatement (Second) of Conflicts § 139(2) establishes a presumption in favor of admissibility. But this is not the end of the inquiry. D.C. courts will admit evidence that is not privileged under its law but is privileged under the law of the state with the most significant relationship with the communication "unless it finds that its local policy favoring admission of the evidence is outweighed by countervailing considerations." Restatement (Second) of Conflicts § 139 cmt. d. These considerations include: (1) the number and nature of contacts that the forum state has with the parties and with the transaction involved, (2) the relative materiality of the evidence sought to be excluded, (3) the type of privilege involved, and (4) fairness to the parties. Restatement (Second) of Conflicts § 139 cmt. d.

Here, a D.C. court would find that countervailing considerations outweigh D.C.'s local policy favoring admissibility. First, the nature of D.C.'s contacts with the parties and transaction are not relevant to this evidentiary privilege conflict. D.C. has two such contacts: (1) plaintiff is a citizen of D.C., ECF No. 49-1 at 2, and (2) the Property discussed by accountant and clients is in D.C., *id.* at 3. Though D.C. has an interest in applying its privilege law to its citizens, plaintiff was neither the accountant nor client in this case. And though D.C. also has an interest in applying its property law to local property, this dispute involves privilege law, not property law.

The type of privilege involved also suggests that D.C. courts would apply Maryland law. A forum "will be more inclined to give effect to a foreign privilege that is well established and

recognized in many states than to a privilege that is relatively novel and recognized in only a few states." Restatement (Second) of Conflicts § 139 cmt. d. The accountant-client privilege is hardly "novel," as roughly one-third of states recognize it. *See* Charles Alan Wright & Arthur Miller, Fed. Prac. & Proc. Evid. § 5427 at nn.3 & 4 (1st ed.).

Additionally, fairness concerns indicate that a D.C. court would recognize Maryland's accountant-client privilege. When Mr. Wilner and defendants discussed tax implications regarding the Property, they reasonably expected Maryland's account-client privilege to apply. *See* Restatement (Second) of Conflicts § 139 cmt. d ("The forum will be more inclined to give effect to a privilege if it was probably relied upon by the parties."). Indeed, Mr. Wilner advised defendants from his Maryland-based tax practice, ECF No. 70 at 6, and CLH, the entity receiving tax advice, is also a citizen of Maryland. ECF No. 1 ¶ 15; *see CostCommand, LLC*, 820 F.3d at 21.

In addition to the parties' reasonable expectation that their communications would be privileged, forum-shopping concerns also weigh in favor of recognizing Maryland's accountant-client privilege. If the Court were to apply D.C. law, which does not recognize an accountant-client privilege, this approach might incentivize future plaintiffs to sue in a forum that does not recognize the privilege. Take, for example, an LLC with citizenship in five states. A plaintiff could sue in one of those states that does not have an accountant-client privilege to get around the privilege laws of the other forums.

On the other hand, the second factor—the materiality of the evidence sought to be excluded—strongly weighs in favor of a D.C. court applying its forum law. As explained above, defendants' correspondences with Mr. Wilner discussing plaintiff are relevant to the question of whether defendants intended to give plaintiff 10% equity in the Property.

Yet on balance, the Court predicts that a D.C. court would find D.C.'s minimal contacts with the communications, the prevalence of the accountant-client privilege nationwide, and fairness concerns sufficient to rebut the presumption of admissibility established by the Restatement (Second) of Conflicts § 139(2). Thus, because Maryland law applies, and because defendants properly invoked Maryland's accountant-client privilege, the Court will deny plaintiff's Motion to Compel with respect to Request for Production No. 9.[5]

H.    Request for Production No. 5

Relatedly, plaintiff requests the production of "[c]opies of any and all prepared, drafted, and or/filed state tax or federal income tax returns." ECF No. 50 at 6. Defendants objected to this request as overly vague, irrelevant, and overbroad as it failed to "specify any reasonable period for the tax returns sought." ECF No. 53-17 at 6. Plaintiff's counsel then sent a letter to defendants' counsel clarifying that plaintiff requests state and local tax returns from 2015 to 2018. ECF No. 50-1 at 87. The letter explained that this information would be "highly relevant in determining how CLH treated its payments to [plaintiff] for accounting and tax purposes, particularly given its several payments to [plaintiff] during said period of time." *Id.* In response, defendants stood by their objection and refused to produce any tax returns. *See* ECF No. 52-1 at 21. Plaintiff now requests tax returns from only 2014 and 2015. ECF No. 50 at 6.

Plaintiff's request goes well beyond the scope of his case. Notably, plaintiff fails to specify *which* defendants he seeks tax returns from. Plaintiff likely requests tax returns from CLH, as he wishes to "determin[e] how CLH treated its payments" to him. ECF No. 50-1 at 87. This

---

[5] Even if a D.C. court would decline to apply Restatement (Second) of Conflicts § 139(2) and instead apply an ordinary governmental interest analysis, the result would be the same. For the reasons explained above, Maryland has a more significant relationship to this dispute.

information is indeed relevant to plaintiff's claims, as it may indicate whether defendants intended to give plaintiff a 10% equity interest in the Property.

Yet asking defendants to turn over CLH's state and federal tax returns from 2014 and 2015 would be unduly burdensome, as CLH's payments or loans to plaintiff will make up only a small part of those returns. The Court will thus order defendants to produce redacted versions of CLH's state and federal tax returns from 2014 and 2015, leaving only the information pertaining to plaintiff's claims unredacted. If information in any of the redacted tax returns indicates that the entire return would be relevant to plaintiff's claims, plaintiff can move for the Court to review the tax return *in camera*.

I.      Requests for Admission Nos. 7 & 16(b)–(c) .

Finally, plaintiff seeks a response to Request for Admission Nos. 7 and 16(b)–(c). Request for Admission No. 7 reads: "Admit that Lash represented to the LLC and defendant Cohen that he discussed 'compensation' with [plaintiff] prior to the purchase of the Property." ECF No. 47-1 at 20. Defendants objected on the grounds that plaintiff did not define the term "compensation," but admitted that "Mr. Lash communicated to Mr. Cohen [plaintiff's] desire to receive compensation if certain circumstances were met and certain unaddressed terms were ultimately agreed upon." *Id.* In his Motion to Compel, plaintiff does not explain why this response is inadequate. The fact that plaintiff is not satisfied with the extent of the admission is not grounds for the Court to compel a further answer. The Court will thus deny plaintiff's Motion to Compel with respect to Request for Admission No. 7.

Finally, plaintiff also seeks a response to Request for Admission Nos. 16(b)–(c), which read: "[a]dmit that Mr. Cohen exchanged emails regarding [plaintiff's] compensation with Wilton Lash" and "[a]dmit that Mr. Cohen exchanged emails regarding [plaintiff's] compensation with

Jason Goldblatt." ECF No. 47-1 at 23. As defendants have already admitted both (b) and (c), *id.*, plaintiff's Motion to Compel with respect to Request for Admission Nos. 16(b)–(c) will be denied.

* * * * *

Since the Court will authorize further fact discovery, it will deny defendants' Motion for Summary Judgment [ECF No. 59] as premature. It will also grant plaintiff's Motion for an Extension of Time to Complete Discovery [ECF No. 47].

## CONCLUSION

In sum, for the reasons explained above, the Court will order as follows:

Defendants' Motion for Leave to File an Amended Answer, Affirmative Defenses, and First Amended Counterclaim [ECF No. 42] will be **GRANTED**. Plaintiff will also be **GRANTED** leave to file the document at ECF No. 49-1 as his Third Amended Complaint. The document must be filed and properly captioned as the Third Amended Complaint within five (5) days. Defendants shall answer the Third Amended Complaint within ten (10) days of its filing. Accordingly, Plaintiff's Motion for Leave to File a Second Amended Complaint [ECF No. 45] will be **DENIED** as moot.

Plaintiff's Motion to Compel [ECF No. 50] and Supplemental Motion to Compel [ECF No. 52] will be **GRANTED** with respect to Request for Production No. 2, **GRANTED IN PART** with respect to Request for Production No. 5, and **DENIED** with respect to Interrogatory No. 4, Request for Production Nos. 8, 9, 17, 20, and Request for Admission Nos. 7 and 16(b)–(c).

Plaintiff's Motion for a Status Hearing [ECF No. 50] will be **DENIED**.

Defendants' Motion to Quash Plaintiff's Subpoena to Paul H. Wilner, CPA [ECF No. 60] will be **DENIED** as moot.

Finally, since the Court will permit additional discovery, defendants' Motion for Summary Judgment [ECF No. 59] will be **DENIED** as premature and plaintiff's Motion for an Extension of Time to Complete Discovery [ECF No. 47] will be **GRANTED**.

A separate Order and Scheduling Order accompany this Memorandum Opinion.

Date: September 17, 2020

Hon. Royce C. Lamberth
United States District Judge