## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **JOHN L. RAY,** | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | Case No. 19-cv-2841-RCL |
| | ) | |
| **CLH NEW YORK AVE, LLC**, *et al.*, | ) | |
| *Defendants.* | ) | |

|  |  |  |
|---|---|---|
| **CLH NEW YORK AVE, LLC,** | ) | |
| *Counterclaim Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | Case No. 19-cv-2841-RCL |
| | ) | |
| **JOHN L. RAY**, | ) | |
| *Counterclaim Defendant.* | ) | |

## <u>MEMORANDUM OPINION</u>

Discovery in this matter closed on December 2, 2020. *See* ECF No. 82. Since then, five motions have become ripe. Defendants Richard Cohen, Tony Lash, Donnie Hinton, and CLH New York Ave, LLC ("CLH LLC") move for summary judgment on all ten counts of plaintiff John Ray's Corrected Third Amended Complaint. ECF No. 85. Defendant CLH LLC also moves for partial summary judgment on Counts 1–3 of its Amended Counterclaim against Ray. ECF No. 86.

Before filing a combined opposition to both summary-judgment motions, ECF No. 95, Ray filed three more discovery-related motions. Ray first moves for reconsideration of the Court's ruling in its September 2020 Memorandum Opinion that the defendants properly invoked

1

Maryland's accountant-client privilege during discovery to withhold certain correspondences between the defendants and their accountant. ECF No. 89. Ray also moves for an emergency hearing and to compel CLH LLC to disclose unredacted versions of its 2014 and 2015 tax returns. ECF No. 90. Finally, Ray moves to strike the expert report of Professor Michael Frisch and to preclude Professor Frisch from testifying as an expert witness at trial. ECF No. 91. The defendants oppose all three motions. ECF Nos. 94, 96, 97.

Upon consideration of the parties' filings, the applicable legal standards, and the record herein, the Court will **DENY** Ray's motion to reconsider, ECF No. 89, **DENY** Ray's motion for an emergency hearing and to compel the production of CLH LLC's unredacted tax returns, ECF No. 90, and **DENY IN PART** and **DISMISS IN PART AS MOOT** Ray's motion to strike the expert report of Professor Frisch and preclude him from testifying as an expert at trial. ECF No. 91. The Court will further **GRANT** defendants Richard Cohen, Tony Lash, Donnie Hinton, and CLH LLC's motion for summary judgment on all ten counts of Ray's Corrected Third Amended Complaint, ECF No. 85. And it will **GRANT IN PART** and **DISMISS AS MOOT IN PART** CLH LLC's motion for partial summary judgment on Counts 1–3 of its Amended Counterclaim against Ray, ECF No. 86.

## I. BACKGROUND

### A. Procedural History

#### i. The Complaint

In August 2019, Ray sued Richard Cohen, Tony Lash, and Donnie Hinton, along with an LLC that Cohen, Lash, and Hinton formed (CLH LLC), in the Superior Court of the District of Columbia. *See* ECF No. 1-1 ("Compl.") at 1–2. Ray claimed that defendants Cohen, Lash, and Hinton breached their oral agreement to give Ray a 10% equity interest in real property they

owned. Compl. at ¶ 45. In short, Ray alleged that in 2012, he discovered that the property located at 1345 New York Avenue N.E., Washington, D.C. ("the Property") presented a lucrative real-estate investment opportunity. *Id.* at ¶ 10–12. After making that discovery, Ray claimed, he brought the investment opportunity to defendant Lash. *Id.* at ¶ 13. Because of his due diligence on the Property, the complaint alleged, defendant Lash and his two business partners (defendants Cohen and Hinton) purchased the Property through an LLC the three of them formed together (CLH LLC). *Id.* at ¶ 57. In return for his due diligence on the Property and discovery of this investment opportunity, Ray claimed, Cohen, Lash, and Hinton orally promised him a 10% "equity interest in the Property and any improvements thereon." *Id.* at ¶ 45. But after seven years of repeatedly asking Cohen, Lash, and Hinton to memorialize that agreement and pay him the amount owed, they never honored their promise. *Id.* at ¶ 55. So, in 2019, Ray sued. *See id.* Shortly after initiating his suit, Ray also filed a *lis pendens* against the Property with the District of Columbia Recorder of Deeds. *See* ECF No. 9 at 13.[1]

The defendants timely removed the suit to federal court. ECF No. 1 at 3. Ray then filed an Amended Complaint, ECF No. 6, and the defendants answered. ECF No. 9. Defendant CLH LLC separately counterclaimed, alleging that Ray's filing of the *lis pendens* against the Property was improper because Ray claimed only an interest in the *entity owning the property* (CLH LLC), not in the *Property itself*. *Id.* at 12–17. In its counterclaim, CLH LLC seeks (1) a declaratory judgment

---

[1] "*Lis pendens*" is Latin for "pending lawsuit." *Lis Pendens*, BLACK'S LAW DICTIONARY (11th ed. 2019). As used here, the term refers to "[a] notice, recorded in the chain of title to real property, required or permitted in some jurisdictions to warn all persons that certain property is the subject matter of litigation, and that any interests acquired during the pendency of the suit are subject to its outcome." *Id.*

stating that Ray's filing of the *lis pendens* was improper under D.C. law, (2) the cancellation and release of the *lis pendens*, and (3) sanctions pursuant to D.C. Code § 42-1207(d)(1).[2]

ii.   Discovery

The parties proceeded to discovery. *See* ECF Nos. 9 & 17. During discovery, and with the Court's permission, both sides amended their pleadings. CLH LLC filed an Amended Counterclaim with a newly added claim for unjust enrichment (Count 4), which requested the return of $190,000 it allegedly advanced to Ray in 2013. *See* ECF No. 84 at ¶¶ 45–50. Ray also filed a Third Amended Complaint,[3] which added claims for beach of the covenant of good faith and fair dealing, common law fraud, civil conspiracy, promissory estoppel, and "breach of partnership loyalty." ECF No. 79.

Just before the close of discovery, Ray moved to compel responses to certain discovery requests. ECF No. 50 at 6. Relevant here is one of those requests, which sought copies of CLH LLC's tax returns from 2014 and 2015. *See id.* The Court found Ray's request to be "unduly burdensome" and thus granted it only in part. *Ray*, 2020 WL 5594064, at *10–11. It ordered the defendants to "produce redacted versions of CLH's state and federal tax returns from 2014 and 2015, leaving only the information pertaining to plaintiff's claims unredacted." *Id.* at *11. The Court added that "[i]f information in any of the redacted tax returns indicates that the entire return

---

[2] D.C. Code § 42-1207(d)(1) reads: "If judgment is rendered in the action or proceeding against the party who filed the notice of the pendency, the judgment shall order the cancellation and release of the notice at the expense of the filing party as part of the costs of the action or proceeding. When appropriate, the court may also impose sanctions for the filing."

[3] After moving for leave to file a second amended complaint, Ray subsequently filed a "Notice" that added a new claim to his proposed second amended complaint. ECF No. 49. Because the Notice added a new claim, the Court treated the Notice as a motion for leave to file a third (rather than second) amended complaint. *Ray v. CLH New York Ave, LLC*, No. 19-CV-2841, 2020 WL 5594064, *1 n.1 (D.D.C. Sept. 18, 2020). The Court granted him leave to do so. *Id.*

would be relevant to plaintiff's claims, plaintiff can move for the Court to review the tax return *in camera*." *Id.*

Because the Court authorized this limited additional discovery, it extended the deadline for fact discovery until November 2, 2020 and ordered that summary-judgment motions be submitted by November 16, 2020. ECF No. 78 at 1. At Ray's request (and without opposition from the defendants), the Court extended both deadlines by one month. ECF No. 82. Without seeking the Court's leave, Ray then filed a "Corrected Third Amended Complaint," which includes several paragraphs of new allegations against the defendants. *See* ECF No. 83-1 at 9–10, 17–18.[4]

### iii.    The Present Motions

After the discovery period closed, defendants Cohen, Lash, Hinton, and CLH LLC timely moved for summary judgment on all ten counts of Ray's Corrected Third Amended Complaint. ECF No. 85. CLH LLC also timely moved for partial summary judgment on Counts 1–3 of its Amended Counterclaim against Ray. ECF No. 86. Ray then sought an unopposed extension of his deadline to respond, which the Court granted. ECF Nos. 87 & 88. Rather than using that extension to respond to the defendants' summary-judgment motions, however, Ray apparently used this time to prepare three additional discovery-related motions.

First, Ray moved for reconsideration of the Court's ruling in its September 2020 Memorandum Opinion that the defendants properly invoked Maryland's accountant-client privilege during discovery. ECF No. 89. Second, Ray filed a "second emergency motion to compel

---

[4] The Court admonishes plaintiff's counsel's repeated efforts to amend Ray's pleadings without leave of Court by filing an amended pleading as a "Notice" or a "Correction." *See* ECF Nos. 49 & 83. As plaintiff's counsel should be well aware, Federal Rule of Civil Procedure 15(a) permits a party to amend its pleading "once as a matter of course." Fed. R. Civ. P. 15(a). In all other cases, however, "a party may amend its pleading only with the opposing party's written consent or the court's leave." *Id.* These not-so-subtle efforts to avoid Rule 15(a)'s requirements are not lost on the Court.

and for an emergency status hearing," asking the Court to compel CLH LLC to "more fully disclose" its tax returns. ECF No. 90. And third, Ray moved to strike the expert report of Professor Frisch and to preclude him from testifying as an expert witness at trial. ECF No. 91. Ray then sought another extension of the deadline to respond to the defendants' summary-judgment motions. ECF No. 92. The Court granted his request. ECF Min. Order 2/12/2021. The defendants opposed all three of Ray's discovery-related motions, ECF Nos. 94, 96, 97, and Ray timely responded, ECF Nos. 102, 104, 105. Eventually, Ray filed a combined opposition to the two summary-judgment motions. ECF No. 95.

Ray's three discovery-related motions, ECF Nos. 89, 90, 91, and the defendants' summary-judgment motions, ECF Nos. 85, 86, are now ripe for consideration. Before addressing the summary-judgment motions, the Court must first resolve the three outstanding discovery motions.

## II. RAY'S DISCOVERY-RELATED MOTIONS

For the reasons explained below, the Court finds that Ray's discovery-related motions are either without merit or moot. It will address each in turn.

### A. The Court Will Deny Ray's Motion to Reconsider

In the Court's September 18, 2020 Memorandum Opinion ruling on various discovery-related motions, it denied Ray's request to compel the defendants' correspondences with their Maryland-based accountant. *See Ray*, 2020 WL 5594064, at *7–10. After conducing a choice-of-law analysis, the Court held that the defendants properly invoked Maryland's accountant-client privilege. *See id.* at *8–10. Thus, the Court explained, Ray could not compel those documents. *See id.*

More than four months after the Court's ruling—and two months after the close of discovery—Ray now moves under Federal Rule of Civil Procedure 60(b) for reconsideration of

the ruling that the defendants properly invoked Maryland's accountant-client privilege. ECF No. 89. Ray argues that the Court's analysis of the issue was flawed because D.C. (not Maryland) has the most significant relationship to the communications between the defendants and their Maryland-based accountant. *Id.* at 2, 3. Thus, Ray claims, D.C. law governs. *Id.* And because D.C. does not recognize an accountant-client privilege, Ray argues, the Court should not have denied his motion to compel. *Id.* Alternatively, Ray argues that even if Maryland (not D.C.) has the most significant relationship to the communications, the communications still should have been discoverable, because the Court did not identify any "special reason why the forum policy favoring admission should not be given effect." *Id.* at 9 (citing Restatement (Second) of Conflicts § 139(2)). The defendants oppose Ray's motion, arguing that he fails to point to any intervening legal or factual issue warranting reconsideration. ECF No. 94 at 3.

At the outset, the Court notes that Ray's invocation of Rule 60(b) at this posture is improper. By its terms, Rule 60(b) applies only to *final* judgments, not interlocutory orders. *See* Fed. R. Civ. P. 60(b) (allowing a court to "relieve a party or its legal representative from a final judgment, order, or proceeding"); *accord* Wright, Miller & Kane, *Federal Practice & Procedure* § 2851 (3d ed. 2012) (recognizing that "Rule 60 regulates the procedures by which a party may obtain relief from a final judgment"). Accordingly, because the Court's September 2020 ruling denying Ray's motion to compel was an interlocutory ruling, Ray's motion is not properly brought under Rule 60(b).

This does not mean, of course, that Ray cannot seek reconsideration of the Court's ruling. An interlocutory order "may be revised at any time before the entry of the judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see Wright & Miller, supra*, at § 2852 (noting that Rule 60(b) does not limit "the power of a court to modify an

7

interlocutory judgment or order at any time prior to final judgment"). Motions to reconsider an interlocutory order are within the discretion of the trial court and may be entered "as justice requires." *Lemmons v. Georgetown Univ. Hosp.*, 241 F.R.D. 15, 21–22 (D.D.C. 2007).

The Court finds no reason to reconsider its prior ruling that the defendants properly invoked Maryland's accountant-client privilege. Ray does not point to any change in controlling law or newly available evidence. *See generally* ECF No. 89. Instead, he simply repeats arguments that either could have been made or were already made in his original motion to compel. *Compare* ECF No. 52, *with* ECF No. 89. But it is well-established that "[a] motion to reconsider is not an opportunity to reargue facts and theories upon which the court has already ruled, or a vehicle for presenting theories or arguments that could have been advanced earlier." *Clay v. District of Columbia*, No. 03-CV-466, 2005 WL 1378768, at *1 (D.D.C. June 6, 2005). And as for the "special reasons" warranting the application of Maryland law that Ray claims the Court neglected to identify, the Court suggests Ray give its Memorandum Opinion a closer read, as he will find all four of them listed there. *See Ray*, 2020 WL 5594064 at *9–10.[5] In short, Ray gives the Court no reason to reconsider, let alone reverse, its prior ruling. The Court will thus deny Ray's motion to reconsider, ECF No. 89.

## B. The Court Will Deny Ray's Second Motion to Compel

The next discovery-related motion presently before the Court is Ray's motion to compel CLH LLC to "more fully disclose" its 2014 and 2015 tax returns. ECF No. 90 at 1.[6] To

---

[5] Ray's claim that the Court failed to cite *Kuhn & Kogan* is likewise frivolous, as it is factually incorrect. *See* ECF No. 89 at 9. The Court's Memorandum Opinion cites that case twice. *See Ray*, 2020 WL 5594064 at *8, 9 (citing *Kuhn & Kogan, Chtd. v. Jeffrey C. Mensh & Assocs.*, 77 F. Supp. 52, 54 (D.D.C. 1999)).

[6] On the first page of his motion, Ray also asks the Court to order the defendants to "give complete and full responses to Plaintiff's interrogatories and request for production of documents." ECF No. 90. Yet Ray never elaborates on this request, nor does he specify *which* interrogatories or requests for production of

contextualize this request, which is Ray's second motion to compel CLH LLC's tax returns, the Court will briefly recount the relevant procedural history.

During discovery, Ray moved to compel the defendants to produce "[c]opies of any and all prepared, drafted, and/or filed state tax or federal income tax returns." ECF No. 50 at 6. He subsequently clarified that he sought returns only from 2014 and 2015. *See id.* Ray explained that the tax returns would be "highly relevant in determining how CLH treated its payments to [Ray] for accounting and tax purposes, particularly given its several payments to [Ray] during [2014 and 2015]." ECF No. 50-1 at 87; *see* ECF No. 50 at 9 (Ray's first motion to compel explaining that he sought the tax returns to "ascertain whether [CLH LLC] factored in Ray's 10% compensation").

In the Court's September 2020 ruling, it granted in part Ray's motion to compel CLH LLC's tax returns. *See Ray*, 2020 WL 5594064 at *10–11. The Court first noted that CLH LLC's tax returns from 2014 and 2015 are relevant to Ray's claims because the returns may indicate whether the defendants intended to give Ray a 10% equity interest in the Property. *Id.* at *11. But, the Court explained, "asking defendants to turn over CLH's state and federal tax returns from 2014 and 2015 would be unduly burdensome, as CLH's payments or loans to [Ray] will make up only a small part of those returns." *Id.* So the Court granted Ray only part of his request. It ordered the defendants to "produce redacted versions of CLH's state and federal tax returns from 2014 and 2015, leaving only the information pertaining to plaintiff's claims unredacted." *Id.* And it further provided that "[i]f information in any of the redacted tax returns indicates that the entire return would be relevant to plaintiff's claims, plaintiff can move for the Court to review the tax return *in camera*." *Id.*

_____

documents he believes warrant the defendants' further response. *See generally id.* The Court thus cannot grant Ray any relief on this vague and unsubstantiated request.

Shortly after the Court issued its ruling, the defendants turned over redacted copies of CLH LLC's 2014 and 2015 state and federal tax returns. ECF No. 90 at 4. Three months later, after the discovery period had closed and after the defendants had moved for summary judgment, Ray filed his second motion to compel. ECF No. 90; *see* ECF Nos. 78, 85, 86. This is the motion presently before the Court.

In his motion, Ray argues that "[t]he 2014 and 2015 tax forms [defendants] provided to [him] are so heavily redacted as to be nonresponsive." ECF No. 90 at 6. Ray asks the Court to compel the defendants "to submit unredacted 2014 and 2015 returns with more detailed information about the CLH partnership, its members' relative ownership, as well as CLH's relationship to Willco [Cohen's company]." *Id.* Alternatively, plaintiff asks the Court to order defendants to "produce its redacted tax returns directly to the [C]ourt for *in camera* review." *Id.* at 7. The defendants oppose Ray's motion, arguing that his request for unredacted tax returns is untimely and that the information he seeks is not relevant to his claims. ECF No. 96 at 3.

The Court need not address the merits of Ray's request, because it finds his motion to be untimely. *See Material Supply Intern., Inc. v. Sunmatch Indus. Co., Ltd.*, 146 F.3d 983, 993 (D.C. Cir. 1998) (holding that a district court was "well within its discretion" to deny a litigant's motion to compel as untimely when the motion was filed after the discovery deadline set by the district court). Ray filed his "emergency" motion to compel almost *two months* after the period for discovery had closed. *See* ECF No. 90 (emergency motion to compel, filed on 1/22/21); ECF No. 82 (order setting 12/2/20 as the discovery deadline). By the time Ray filed his motion, the defendants had timely moved for summary judgment. *See* ECF Nos. 85 & 86. Ray then sought an extension of the time to file his opposition to the defendants' summary-judgment motions but used that extension not to oppose the summary-judgment motions but to file this second motion to

compel. *See* ECF No. 87 (Ray's motion seeking an extension of time to oppose the defendants' summary-judgment motions, filed on 1/11/21); ECF No. 90 (Ray's second motion to compel, filed on 1/22/21); ECF No. 92 (Ray's motion for an additional extension of time to file his opposition to the defendants' summary-judgment motions, filed on 1/28/21); ECF No. 95 (Ray's opposition to the defendants' summary-judgment motions, filed on 2/4/21). Ray's motion to compel does not acknowledge the fact that the discovery period has closed, let alone argue why the Court should consider his untimely filing. *See generally* ECF No. 90.

Once the defendants opposed Ray's motion as untimely, plaintiff's counsel replied that in "September, October, and November 2020" he had to assist with an immediate family member's fatal illness. ECF No. 104 at 2. And in early December, plaintiff's counsel says, he and his family experienced a COVID-19 outbreak, where he and twenty of his family members fell ill. *Id.* at 3. This resulted in his "debilitation for the entire month of December." *Id.* The Court does not doubt the sincerity of these claims. But these circumstances do not excuse plaintiff's counsel's failure to seek an extension of the discovery deadline. Indeed, in October 2020, plaintiff's counsel filed, and the Court granted, a consent motion to push the fact discovery deadline to December 2, 2020. ECF Nos. 81, 82. Plaintiff's counsel does not explain why he was unable to seek another extension or otherwise notify the Court and opposing counsel of his plans to re-litigate discovery issues after the December 2, 2020 deadline had elapsed. *See* ECF Nos. 81, 87.

In short, Ray had ample time to seek an extension of the discovery period. Instead of doing so, he waited nearly two months after the discovery period had closed and one month after the defendants had timely moved for summary judgment, to file a second "emergency" motion to compel. The Court will thus deny Ray's motion as untimely. *See Material Supply Intern., Inc.*, 146 F.3d at 993.

### C. The Court Will Deny Ray's Motion to Strike Professor Frisch's Expert Report and Will Dismiss as Moot Ray's Request to Preclude Professor Frisch from Testifying as an Expert Witness at Trial

The final discovery-related motion before the Court is Ray's motion to strike Professor Frisch's expert report and to preclude him from testifying as an expert witness at trial. ECF No. 91. The defendants retained Professor Frisch as an expert witness to opine on the issue whether Ray violated the District of Columbia Rules of Professional Conduct for attorneys in his dealings with the defendants. *Id.* at 1. Ray now seeks to strike Professor Frisch's expert report and to preclude Professor Frisch from testifying as an expert at trial. *See id.* The defendants oppose both requests. ECF No. 97. The Court will address each in turn.

### i. Motion to Strike Professor Frisch's Expert Report

Federal Rule of Civil Procedure 26(a)(2)(B) provides that expert witnesses "retained or specifically employed to provide expert testimony in the case" must prepare and disclose a written report. Fed. R. Civ. P. 26(a)(2)(B). The Rule lists six requirements for the contents of the written report. *See id.* Ray moves to strike Professor Frisch's expert report as noncompliant with Rule 26 because he says the written report "fails to provide an adequate basis from which its opinions are derived," is conclusory, and "fails to reference any background materials that are essential to understanding the rules." ECF No. 91 at 3, 5; *see* Fed. R. Civ. P. 26(a)(2)(B)(1)–(2).

But even if Professor Frisch's written report were noncompliant with Rule 26(a), the proper remedy would not be to *strike* his report. Federal Rule of Civil Procedure 37(c)(1) provides that if a party fails to provide the information required by Rule 26(a), then "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In addition to that sanction, or in place of it, the Court may also "order the payment of reasonable expenses," "inform

the jury of the party's failure," or "impose other appropriate sanctions." Fed. R. Civ. P. 37(c)(1)(A)–(C). Though Ray cites one district court case in which the court struck an expert report for failing to comply with Rule 26(a), the Court respectfully declines to follow that approach and instead takes its guidance from the Federal Rules. *See* ECF No. 91 at 3 (citing *United States ex rel. Mossey v. Pal-Tech, Inc.*, 231 F. Supp. 2d 94, 98 (D.D.C. 2002)).[7]

Applying Rule 37(c)(1), the Court need not determine whether Professor Frisch's report complies with Rule 26(a), however, because the Court finds any noncompliance to be harmless. *See* Fed. R. Civ. P. 37(c)(1). As the Court will explain in the sections that follow, the defendants are entitled to summary judgment on all of Ray's claims against them. In granting summary judgment for the defendants, the Court did not rely on or otherwise consider Professor Frisch's expert report. Thus, because the report has no effect on the outcome of Ray's claims, the Court holds that even if the report did not comply with Rule 26(a), its inclusion in the summary-judgment record was harmless.

ii.    Motion to Preclude Professor Frisch's Expert Testimony

Unlike his request to strike the expert report, Ray's request to preclude Professor Frisch from testifying as an expert witness at trial does find some support in the law. As noted above, Federal Rule 37(c)(1) states that if a party fails to provide the information required by Rule 26(a) in its expert report, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, *or at trial*, unless the failure was substantially justified or is harmless."

---

[7] Nor does Federal Rule of Civil Procedure 12(f) authorize the Court to strike Professor Frisch's expert report. Rule 12(f) allows courts to "strike from a *pleading* an insufficient reference or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). That Rule cannot authorize Ray's requested relief here, because an expert report is not a pleading. *See* Fed. R. Civ. P. 7(a)(1)–(7) (listing the "[o]nly . . . pleadings . . . allowed"); *accord Saiyed v. Council on Am.-Islamic Relations Action Network, Inc.*, 321 F.R.D. 455, 458–59 (D.D.C 2017) (collecting cases); *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.*, 474 F. Supp. 2d 75, 80 (D.D.C. 2007).

Fed. R. Civ. P. 37(c)(1) (emphasis added). But because the Court will enter summary judgment for the defendants on all ten counts of Ray's Corrected Third Amended Complaint, Ray's motion to exclude Professor Frisch's expert testimony at trial is moot. Indeed, the defendants retained Professor Frisch as an expert witness to support their affirmative defense that Ray violated his ethical obligations as an attorney and should thus be barred from relief on his equitable claims against the defendants. ECF No. 91 at 1; ECF No. 84 at 22. But none of Ray's equitable claims will go to trial. And Professor Frisch's expert testimony is wholly irrelevant to the one remaining claim in this litigation (CLH LLC's counterclaim for unjust enrichment). *See* ECF No. 84 at ¶¶ 45–50. So Ray's request to exclude Professor Frisch's expert testimony at trial is moot.

### III. SUMMARY-JUDGMENT MOTIONS

Before addressing the merits of the defendants' summary-judgment motions, the Court will first summarize the relevant evidence. As seen through deposition testimony and other evidence produced during discovery, the parties had markedly different understandings of their dealings.

#### A. Two Theories of the Parties' Alleged Agreement

##### i.   Ray's Account of the Relevant Events

According to Ray, the events leading up to the parties' agreement began in late 2011 when a real-estate broker named Mark Mallus told Ray that the Property would soon be on the market. ECF No. 85-4 ("Ray Dep. 1"), at 17–18. In January 2012, after discovering this investment opportunity, Ray conducted due diligence on the Property. ECF No. 95-8, ("Ray Dep. 2"), at 22. Ray learned that the District of Columbia Public Schools ("DCPS") leased the Property (which is a parking lot) and used it to park its school buses when not in use. *Id.* at 24–25. So Ray looked into whether DCPS would continue to lease the Property. *Id.* He also inquired into the possibility of developing a bus depot on the Property, which could be used by tour buses to park after dropping

14

off passengers visiting the National Mall. *Id.*; ECF No. 95-24 at 16–17. This research was no "Herculean task," as Ray simply had to look at the zoning regulations and had the answer within a "few minutes." ECF No. 95-24 at 17. Finally, Ray had conversations with some "folks who were involved in the environment" and members of the D.C. City Council. *Id.* at 24. Most of these conversations were "face-to-face," and "one or two" of them occurred over the phone. *Id.*

After conducting this due diligence, Ray called his long-term friend Tony Lash to "tell him that [Ray] had something that [he] thought [Lash] should be interested in." Ray Dep. 2 at 6. On January 18, 2012, the two met at Ruth's Chris Steak House to discuss the Property. Ray Dep. 2 at 6; ECF No. 85-11 at 3–4. During their meeting, Ray told Lash about his idea of "constructing a bus depot on the Property," about "the due diligence [he] had done thus far on the Property[,]" and about the DCPS lease. ECF No. 85-11 at 3. Ray further told Lash that the Property "presented a great investment opportunity" because the Property would be "income producing." *Id.* at 4.

Shortly thereafter, on February 25, 2012, Ray and Lash visited the Property together. Ray Dep. 2 at 6; ECF No. 85-11 at 4. There, the two "had further discussion about the Property," about "[Ray's] additional due diligence," and about "Ray's desired interest in the Property." ECF No. 85-11 at 4. Eventually, on March 24, 2012, Ray and Lash met to seal the deal. *See* Ray Dep. 2 at 6; ECF No. 85-11 at 4. Over dinner, the two finalized the oral contract that had been forming "over a period of weeks." Ray Dep. 2, at 5; *see* ECF No. 95-24 at 17.

Under the terms of Ray and Lash's oral contract, Ray believed he "would be provided a 10 percent equity interest in the [P]roperty and any improvements thereon," if the "lease with the [DCPS] lasted for five years" after the time Lash purchased the Property or if some other

development on the Property, such as a bus depot, occurred. Ray Dep. 2 at 7.[8] No further terms were agreed upon, and Ray recalled that he and Lash would decide at a later time how exactly Ray would receive his 10% ownership interest. *Id.* When Ray offered to prepare a written agreement to memorialize the parties' agreement, Lash responded that he would have to think about "how we should do that" and said that his lawyers would handle it. *Id.* at 11–12. A few days later, Lash told Ray that one of Lash's business partners, defendant Cohen, would be part of the deal too. *Id.* at 12.

Notably, Ray believed that his 10% interest in the Property was earned entirely based on the work that he did *before* Ray and Lash met for dinner on March 24, 2012 to finalize their oral agreement. Ray Dep. 2 at 15; *see* ECF No. 85-13 ("Ray Dep. 3"), at 16 ("My 10 percent interest in the project was not based on any additional services I might provide from time to time[.] [I]t was based upon what I presented [to] them at that time, and I had no additional requirement of providing services[.]"). Ray did not conduct *any* due diligence on the Property after March 24, 2012. Ray Dep. 2 at 27. And when the defendants eventually purchased the Property in March 2013, Ray did not make any monetary contributions to the purchase, nor did he contribute toward the operational expenses, real estate taxes, or insurance costs associated with the Property. *Id.* at 31–32. Nor did he borrow any money or guarantee any debt in connection with the purchase of the Property. *Id.* at 31. Though Ray made other efforts to add value to the Property after the defendants purchased it, Ray explained that he did not expect to be compensated for that work and that his

---

[8] It is unclear from the record whether Ray believes he has a 10% ownership interest in the *Property itself* or in CLH LLC as the *entity owning the Property*. Ray repeatedly testified in his deposition that he expected to be given a "10 percent equity interest in the [P]roperty and any improvements thereon." *See* Ray Dep. 1 at 21; Ray Dep. 2 at 7, 9, 11. But he also repeatedly testified that he expected "to be a 10 percent owner of the *entity that owned*" the Property. ECF No. 85-15 ("Ray Dep. 4"), at 15 (emphasis added); *see id.* at 25 ("I have an equity interest in [the Property] because I have a 10 percent equity interest in CHL [sic].").

efforts were "free," because it was in his own interest, as a 10% owner of the Property, to increase the Property's value. *Id.* at 17–18.

From 2012 until 2019, Ray repeatedly tried to get the defendants to memorialize a written agreement setting forth the terms of their agreement. *See* Ray Dep. 2 at 11, 30, 52. Yet despite these efforts, the defendants never produced a written document reflecting the original terms of Ray's oral contract with Lash. *Id.* at 52. Nevertheless, Ray recalls multiple events occurring during that time that confirmed the existence of Ray's oral contract with Lash. First, in 2014, the defendants advanced $90,000 to Ray, which would "come out of [his] 10 percent interest." *Id.* at 32–33. And later that year, when Ray told Cohen that he wanted to "sell [his] 10 percent equity interest in the [P]roperty" to help his mother financially, Cohen responded that he wanted Ray "in the deal" and offered to have CLH LLC "loan him" $150,000. *Id.* at 41.

      ii.    The Defendants' Accounts of the Relevant Events

          *a.  Defendant Lash*

Defendant Lash recalls the parties' agreement differently. According to Lash, he and Ray went to visit the Property after Ray told Lash that he "had a deal for [him]." ECF No. 95-3 ("Lash Dep."), at 9–10. In the conversations that followed, Ray "sold" Lash on the idea of purchasing the Property and building a bus depot on the land. *Id.* at 10. The investment would be highly lucrative, Ray explained, because the "City needed a place to park the buses" away from the National Mall to reduce congestion and pollution in that area. *Id.* One solution, Ray proposed to Lash, could be to build a bus depot on the Property, which was a short drive from downtown. *Id.* To facilitate the plan, Ray said that he could "get the legislation passed" to have the buses park on the Property instead of downtown. *Id.*

In March 2012, Lash and Ray met for dinner at Ruth's Chris Steakhouse to discuss the deal and Ray's compensation. Lash Dep. at 15. Lash understood the agreement to be as follows: If Ray could (1) get legislation passed requiring tour buses to park on the Property instead of in the downtown area, (2) get a bus stop (or a streetcar stop) built on the Property, (3) increase the Property's floor-to-area ratio ("FAR"), and (4) "a couple other things," then Ray would get ten percent of the deal. *Id.* at 20; *see id.* at 26. Unlike Ray, Lash did not believe the deal to be contingent upon DCPS maintaining its lease for five years after the purchase of the Property. *Id.* at 21.

Shortly after his dinner with Ray, Lash called defendant Cohen, who was Lash's business partner, to tell Cohen about the deal. *Id.* at 10. Lash explained to Cohen that Ray "sold him" on the idea of purchasing the Property and building a bus depot on the land. *Id.* Lash told Cohen that he thought "it would be a good deal as long as [Ray] got the legislation passed" for a bus depot. *Id.* Lash added that he thought it would be a "good deal" to give Ray ten percent of the deal because Ray was "going to bring value" to the Property. *Id.*

In 2013, defendants Lash, Cohen, and Hinton purchased the Property in the name of CLH LLC for approximately $8.4 million. *See* ECF No. 85-2 at ¶ 40; ECF No. 95-1 at 7. The three men shared CLH LLC equally and contributed equal amounts of money toward the purchase. ECF No. 85-12 at ¶ 47. Eventually, Lash, Cohen, and Hinton gave up on the idea of building a bus depot. ECF No. 85-17 at 33. They did so because the D.C. Mayor would not allow tour buses to be parked there. *Id.* Although this particular opportunity fell through, Lash explained that he and Cohen continued "working with [Ray]" to get "him his 10 percent." *Id.* at 25.

*b. Defendant Cohen*

Defendant Cohen also believed that Ray would be compensated with a 10% "profits interest" if Ray got legislation passed requiring the Property to be the exclusive place to park tour buses, if he increased the Property's FAR, and if he secured transportation along New York Ave. ECF No. 95-4 ("Cohen Dep."), at 15–16.

Notably, Cohen first learned about the Property four years *before* Ray told Lash about the Property in 2012. In 2008, Mark Mallus (the same real-estate broker who Ray says told him about the Property) contacted Cohen and others at Cohen's company (Willco Construction Company) because Mallus thought that Cohen might be interested in purchasing the Property and might be capable of doing so. ECF No. 85-8 at ¶ 4 ("Mallus Decl."); *see* ECF No. 84 at ¶ 17. After a representative from Willco signed a confidentiality agreement, Mallus sent Willco a "brochure, flyers[,] and other marketing materials." *See* Mallus Decl. at ¶ 4; ECF No. 85-7. Cohen and Willco seriously considered purchasing the Property but ultimately did not do so. Cohen Dep. at 18.

## B. The Court Will Not Permit Further Discovery and Will Resolve the Summary-Judgment Motions on the Record as it Stands

As a threshold matter, the Court must first address Ray's argument that the Court should not rule on the defendants' summary-judgment motions until Ray has had additional time for discovery. *See* ECF No. 95 at 13–14. Federal Rule of Civil Procedure 56(d) governs Ray's request. Fed. R. Civ. P. 56(d). Under that Rule, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court may defer considering the movant's summary-judgment motion, deny the motion, allow the nonmovant time to take discovery, or issue "any other appropriate order." Fed. R. Civ. P. 56(d); *see Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012).

Here, relief under Rule 56(d) is not appropriate because Ray did not file an "affidavit or declaration" with "specified reasons" as to why he cannot present facts essential to justify his opposition to the defendants' summary-judgment motions. Fed. R. Civ. P. 56(d). Though Ray's opposition makes reference to a declaration, Ray provided no such thing. *See* ECF No. 95 at 14 (Ray's opposition representing that "[p]laintiff's Declaration definitively states which facts Plaintiff seeks to ascertain and why those facts are necessary to his claims . . . and why those facts are necessary to the litigation."). Instead, Ray simply complains of the defendants' "obstructionist discovery tactics" and insists that summary judgment is premature. *Id.* at 13. That will not do. *See Convertino*, 684 F.3d at 99–100. Accordingly, the Court will deny Ray's request for additional discovery and will consider defendants summary-judgment motions on the record as it stands.

### C.  The Court Will Grant Summary Judgment to the Defendants on All Ten Counts of Ray's Corrected Third Amended Complaint

The defendants move for summary judgment on all ten counts of Ray's Corrected Third Amended Complaint. *See* ECF No. 85. Those counts are: (1) "breach of partnership loyalty," (2) "breach of oral agreement," (3) "breach of the covenant of good faith and fair dealing," (4) "common law fraud and intentional misrepresentation," (5) civil conspiracy, (6) promissory estoppel, (7) unjust enrichment, (8) quantum meruit, (9) constructive trust, and (10) declaratory judgment. ECF No. 83 at ¶¶ 71–138. After setting forth the applicable legal standards, the Court will address each count in turn.

#### i.  Summary Judgment Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when it "might affect the outcome of the suit" under the governing

substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And an issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At the outset, the movant bears the burden of "identifying those portions of the record it believes 'demonstrate the absence of a genuine issue of material fact.'" *White v. Wash. Nursing Facility*, 206 F. Supp. 3d 137, 143 (D.D.C. 2016) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Once the movant has made an "adequate showing that a fact cannot be disputed, the burden shifts to the party opposing summary judgment to 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson*, 477 U.S. at 250). Summary judgment is also proper if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (quoting *Celotex Corp.*, 477 U.S. at 322).

A party asserting that a fact cannot be genuinely disputed, or that a fact *is* genuinely disputed, must support that assertion by either (a) "citing to particular parts of materials in the record," or (b) "showing that the materials cited do not establish the absence or presence of a genuine dispute or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). The party opposing summary judgment, however, "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. Finally, at the summary-judgment posture, the Court may not make credibility determinations or weigh the evidence. *Id.* at 255.

    ii.   Discussion

*a. Count 1: Breach of the Duty of Partnership Loyalty*

Count 1 of Ray's Corrected Third Amended Complaint brings a claim against defendants Lash, Cohen, and CLH LLC for "breach of partnership loyalty." ECF No. 83 at ¶¶ 71–79. Ray alleges that he, Lash, and Cohen "entered into a partnership to purchase and exploit the [P]roperty." *Id.* at ¶ 72. And he further alleges that these defendants breached the duty of loyalty owed to him as partners because they "excluded Ray from his ownership interest in the partnership and compensation from a partnership opportunity that Ray brought to" them. *Id.*

Because this matter was removed to this Court from the Superior Court for the District of Columbia based on diversity jurisdiction, D.C. substantive law governs. *See* ECF No. 1; *Erie R. Co. v. Tompkins*, 304 U.S. 64, 79–80 (1938). Under D.C. law, "the association of 2 or more persons to carry on as co-owners of a business for profit shall form a partnership, whether or not the persons intend to form a partnership." D.C. Code § 29-602.02. To decide whether a partnership has been formed, courts look for "customary attributes of [a] partnership," including "profit and loss sharing," "right of joint control," and capital contributions. *Beckman v. Farmer*, 579 A.2d 618, 627 (D.C. 1990). Ultimately, "whether a partnership exists is an issue of fact" that turns on "the intent of the parties gathered from their agreement, conduct, and circumstances surrounding their transactions." *Id.* Once a partnership is formed, partners are accountable to one another as fiduciaries and owe to each other the "duty of loyalty."[9] *Diamond v. Hogan Lovells US LLP*,

---

[9] The duty of loyalty requires partners to:

> (1) account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property, including the appropriation of a partnership opportunity

> (2) refrain from dealing with the partnership in the conduct or winding up of the partnership business as or on behalf of a party having an interest adverse to the partnership; and

224 A.3d 1007, 1012 (D.C. 2020); D.C. Code § 29-604.07(b)(1)–(3). But without the formation of a partnership, of course, parties do not owe each other a duty of loyalty as partners.

Though Ray alleges in his Corrected Third Amended Complaint that he formed a partnership with defendants Lash, Cohen, and CLH LLC, he does not present *any* evidence indicating that a partnership was indeed formed. *See generally* ECF Nos. 95, 95-1, 95-2. This absence of evidence substantiating Ray's allegations should come as no surprise, as Ray's *own narrative* of his dealings with the defendants does not even closely resemble partnership formation.

At his deposition, Ray testified that on March 24, 2012, he entered into a "contract" with defendant Lash. Ray Dep. 2 at 5. Under that oral contract, Ray said, he would receive a "10 percent equity interest in the property and any developments thereon" if DCPS maintained its lease on the Property for five years, or some other development forced DCPS off the lot. *Id.* at 7. This equity interest, Ray explained, would be given to him as compensation for the due diligence he conducted on the Property and for bringing the opportunity to defendant Lash. Ray Dep. 3 at 16. After Ray entered into this "contract" with Lash, Ray explained, Cohen later agreed to the same terms. Ray Dep. 2 at 12.

Wholly absent from Ray's narrative of the parties' dealings are any of the "common attributes" of a partnership. *Beckman*, 579 A.2d at 627. Ray describes no right of "joint control." *Id.* To the contrary, under Ray's understanding of the parties' deal, Ray's "10 percent equity interest" in the Property would not vest until DCPS maintained its lease for five years, or after some development occurred that forced DCPS off the lot. Ray Dep. 2 at 7. And as Ray admits, he

---

(3) refrain from competing with the partnership in the conduct of the partnership business before dissolution of the partnership.

D.C. Code § 29-604.07(b)(1)–(3).

made no capital contributions to the purchase of the Property. *Id.* at 32. Though Ray could *eventually* share in the profits of the Property under his view of the parties' deal, that profit sharing would not take place until years down the road. In short, the business dealings Ray describes do not show that he and defendants Lash, Cohen, and CLH LLC "carr[ied] on as co-owners of a business for profit." D.C. Code § 29-602.02.

None of Ray's attempts to fabricate a genuine issue as to the question of partnership formation is persuasive. First, Ray argues that there is a genuine issue as to whether the 10% interest the defendants promised him was an equity interest or a profits interest. ECF No. 95 at 18–19 (citing Def's Statement of Undisputed Mat. Facts at ¶¶ 23, 26, 30). Though Ray is correct that this issue is *genuinely* disputed, the nature of Ray's interest is not *material* to Ray's breach-of-loyalty claim. Whether the defendants promised Ray a 10% equity interest or a 10% profits interest in the Property says nothing about whether the parties formed a partnership.

Ray also argues that the conditions of partnership formation are disputed, so the question of partnership formation should go to a jury. ECF No. 95 at 20. In support of this argument, Ray points to Cohen's understanding of the business deal. ECF No. 95 at 20. At his deposition, Cohen explained,

> At some point in time, [Lash] had said to me that he wanted to include [Ray] in our partnership because [Ray] could provide us with a bus terminal and a bus stop and additional F-A-R, and for that [Ray] wanted 10% of our partnership, if he could do those things. And I said to [Lash], "Fine. If [Ray] can do that, it's worth 10%."

*Id.* (quoting Cohen Dep. at 19).

But it is undisputed that Ray never got additional FAR for the Property, nor was a bus terminal or a bus stop ever constructed on the land. *See* Ray Dep. 2 at 14–15; Lash Dep. at 24. Without these contributions, Ray was not entitled to a piece of the partnership under Cohen's

understanding of the agreement. *See* Cohen Dep. at 19. Thus, Cohen's recollection of the parties' agreement does not create a genuine issue as to the material fact of partnership formation.

Next, Ray argues that the "promissory notes" for the $180,000 in "loans" made to Ray strongly suggest that a "business relationship" had formed. ECF No. 95 at 20. "If the parties had not reached an agreement and a business relationship," Ray argues, "it is highly unlikely that business would advance or lend him $180,000.00 to collateralize a consultant contract." *Id.* Though the loaning or advancing of money *could* suggest that parties have formed a business relationship, it says nothing about the *nature* of that business relationship. Without some evidence creating a genuine issue as to whether a partnership had formed, no rational jury could conclude that because the defendants loaned or advanced Ray money, the parties formed a partnership.

Finally, Ray points to a document produced by the defendants during discovery that calculates projected profits from the sale of the Property. ECF No. 95 at 21 (citing ECF No. 95-14 at 2). He claims that the document "constitutes an admission" that the parties had entered into a partnership. *Id.* But that document says no such thing. The document does include a line item reading "J. Ray share of profit . . . 10% . . . 1,236,326." ECF No. 95-14 at 2. But nowhere does the document indicate that Ray and the defendants had formed a partnership. *See id.* Again, without some evidence creating a genuine issue as to whether a partnership had formed, no rational jury could conclude that because a document projecting profits from a sale accounted for some of those profits to go to Ray, the parties had entered into a partnership.

At the summary-judgment posture, it is not enough to rely on unsubstantiated allegations. *See Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015) ("[I]t is well established that [the non-movant] cannot rely on the allegations of her own complaint in response to a summary judgment motion[] but must substantiate them with evidence."). Though Ray *alleges* that he

formed a partnership with defendants Lash, Cohen, and CLH LLC, he has failed to "set forth specific facts showing that there is a genuine issue" as to partnership formation. *White*, 206 F. Supp. 3d at 143. And without a partnership, there can be no breach of the duty of loyalty owed by partners to each other. *See* D.C. Code § 29-604.07(b)(1)–(3). The Court will thus grant summary judgment to the defendants on Count 1 of Ray's Corrected Third Amended Complaint.

### b.   Count 2: Breach of Contract

Ray next brings a claim for "breach of oral agreement" against defendants Lash and Cohen. ECF No. 83 at ¶¶ 80–85. Ray alleges that he, Lash, and Cohen entered into an oral agreement under which the defendants would give him a 10% equity interest in the Property "and any improvements thereon." *Id.* at ¶¶ 80–81. But the defendants breached this oral contract, Ray alleges, because they never paid him his 10% equity interest. *Id.* at ¶ 85.

To show a breach of contract, a plaintiff must establish (1) a valid contract, (2) an obligation or duty arising from the contract, (3) a breach of that duty, and (4) damages caused by that breach. *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009). Contract formation requires, among other things, legally valid consideration. *See, e.g.*, *Wash. Inv. Partners of Del., LLC v. Secs. House*, 28 A.3d 566, 574–75 (D.C. 2011).

Ray argues that there is a genuine issue of material fact as to contract formation, because he says there are "significant credibility issues . . . regarding the foundational agreement first between Lash and Ray, and secondarily between Ray and Cohen." ECF No. 95 at 32. This "classic jury issue," Ray argues, should go to trial. *Id.*

Although Ray is correct that the parties have vastly different recollections of their business dealings, these differences do not present a credibility issue for a jury. Even accepting Ray's understanding of the parties' dealings as true, Ray still loses as a matter of law. *See Holcomb*,

433 F.3d at 895 (noting that when considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant).

Ray testified at his deposition that on March 24, 2012, he entered into an oral "contract" with Lash. Ray Dep. 2 at 8. Under that contract, Ray said, he would receive a "10 percent equity interest in the property and any developments thereon," if DCPS maintained its lease on the Property for five years, or some "development that took place" forced DCPS off the Property. *Id.* This equity interest, Ray testified, would be given to him as compensation for the due diligence he conducted on the Property and for bringing the opportunity to defendant Lash. *See* Ray Dep. 2 at 15, 18, 23, 27. Notably, Ray believes that he earned his interest in the Property based solely on the work he did *before* he and Lash finalized the oral agreement. *See* Ray Dep. 3 at 16. As he explained, "[m]y 10 percent interest in the project was not based on any additional services I might provide from time to time[.] [I]t was based upon what I presented [to] them at that time, and I had no additional requirement of providing services[.]" *Id.*

Under Ray's account of the events, then, no contract was formed because there was no valid, "bargained for" consideration. *Wash. Inv. Partners of Del., LLC*, 28 A.3d at 574–75. Ray repeatedly testified that his 10% equity interest in the Property was based entirely on actions he performed *before* entering into an oral contract with Lash. *See* Ray Dep. 2 at 15, 18, 23, 27; Ray Dep. 3 at 16. But "past consideration" is not valid consideration. 4 *Williston on Contracts* § 8:11 (4th ed. 2021) (recognizing that "something that has been given before the promise was made and, therefore, was neither induced by the promise nor paid in exchange for it, cannot, properly speaking, be sufficient, valid, legal consideration"). And although Ray also explained that he contributed to the value of the Property *after* entering into the alleged oral contract with Lash and

Cohen, he made clear in his deposition that these contributions were *not* a term of the contract and were performed for "free." *See* Ray Dep. 2 at 17–18, 21.

Thus, even if the Court views the evidence in the light most favorable to Ray, he has failed to "make a showing sufficient to establish the existence of an element essential" of his breach-of-contract claim. *Holcomb*, 433 F.3d at 895 (quoting *Celotex Corp.*, 477 U.S. at 322). Because there is no evidence of valid consideration, Ray has failed to establish that a contract was ever formed. The Court will thus grant summary judgment to the defendants on Ray's breach-of-contract claim.

### c.   Count 3: Breach of the Covenant of Good Faith and Fair Dealing

Count 3 of Ray's Corrected Third Amended Complaint alleges that the defendants breached the covenant of food faith and fair dealing. ECF No. 83 at ¶¶ 86–88. Under D.C. law, every contract contains an implied duty of good faith and fair dealing. *Wright v. Howard Univ.*, 60 A.3d 749, 754 (D.C. 2013). But as explained above, Ray has failed to make a showing sufficient to establish contract formation. And without a contract giving rise to the implied duty, Ray cannot sustain his claim for a breach of the covenant of good faith and fair dealing. *See Paul v. Howard Univ.*, 754 A.2d 297, 310 n.28 (D.C. 2000) (recognizing that there must be a contract to "provide a basis for the covenant" of good faith and fair dealing). The Court will thus grant summary judgment to the defendants on Count 3 of Ray's Corrected Third Amended Complaint.

### d.   Count 4: Fraudulent Misrepresentation

Ray next brings a claim against Cohen and CLH LLC for "common law fraud and intentional misrepresentation." ECF No. 83 at ¶¶ 89–103. He alleges that Cohen, acting individually or as an agent of CLH LLC, "deliberately, intentionally, and maliciously represented his intention to compensate [Ray] during discussions with Lash in March 2012 and [Ray] in April 2012." *Id.* at ¶ 90. Ray adds that he refrained from sharing the Property opportunity with other

buyers in reliance on Cohen's representations and that Cohen "now admits that he never intended to compensate" Ray. *Id.* at ¶¶ 91–92.

Under D.C. law, a claim for fraudulent misrepresentation requires proof of six elements: (1) a false representation, (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with intent to deceive, (5) an action taken in reliance upon the representation, and (6) reliance on the misrepresentation was reasonable. *Sibley v. St. Albans Sch.*, 134 A.3d 789, 808–09 (D.C. 2016). A false representation can be either an "affirmative misrepresentation" or a "failure to disclose a material fact when a duty to disclose that fact has arisen." *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 438 (D.C. 2013) (quoting *Rothenberg v. Aero Mayflower Transit Co., Inc.*, 495 F. Supp. 399, 406 (D.D.C. 1980)). And a misrepresentation is material when "it would be likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so." *Id.* (quoting *Sarete, Inc. v. 1344 U Street Ltd. P'ship*, 871 A.2d 480, 493 (D.C. 2005)); *accord* Restatement (Second) of Contracts § 162(2).

In his opposition to the defendants' summary-judgment motion, Ray does not cite any evidence in the record suggesting that Cohen made a materially false representation to him with an intent to deceive him. Instead, Ray merely rehashes the same allegations made in his Corrected Third Amended Complaint. He conclusorily asserts that "Cohen consistently and continuously misled [him] to believe that he was an equity partner in the Coh[e]n-Lash business relationship." ECF No. 95 at 27. And, Ray adds, "Cohen made consistent intentional misrepresentations to Ray, upon which Ray relied upon [sic] between 2012 and 2019." *Id.* at 28. Again, these bare assertions unsupported by evidence are insufficient to defeat summary judgment. *Anderson*, 477 U.S. at 248; Fed. R. Civ. P. 56(c)(1)(A)–(B).

29

As a last-ditch effort, Ray points to "the two promissory notes" as evidence that Cohen "understood the implications of the venture beginning in April 2012." ECF No. 95 at 27. This evidence, however, does not create a genuine issue on Ray's claim for fraudulent misrepresentation. It says nothing about whether Cohen made materially false representations to Ray about his share of the Property. *See Anderson*, 477 U.S. at 248 (holding that an issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). Thus, because Ray cannot "make a showing sufficient to establish" any of the essential elements of his fraudulent-misrepresentation claim, the Court will grant summary judgment to the defendants on Count 4. *Holcomb*, 433 F.3d at 895 (quoting *Celotex Corp.*, 477 U.S. at 322).

    *e.   Count 5: Civil Conspiracy*

Count 5 of Ray's Corrected Third Amended Complaint alleges a claim for "civil conspiracy" against defendants Lash and Cohen. ECF No. 83 at ¶¶ 104–08. His civil-conspiracy claim alleges that Lash "colluded" with Cohen to deny Ray payment of his 10% equity interest. *Id.* at ¶¶ 106–07. He adds that "Cohen's actions and denial of compensation demonstrate an agreement minimally between Cohen, Lash, and Hinton to avoid payment to Ray as agreed, and even to not pay him in any respect for services rendered." *Id.* at ¶ 107.

A claim for civil conspiracy is not an independent action. *Weishapl v. Sowers*, 771 A.2d 1014, 1023 (D.C. 2001) (quoting *Griva v. Davison*, 637 A.2d 830, 848 (D.C. 1994)). Instead, it "depends on the performance of some underlying tortious act." *Id.* at 1023–24. But none of Ray's tort claims against the defendants survives summary judgment. Thus, Ray cannot sustain his claim for civil conspiracy, and the Court will grant summary judgment to the defendants on Count 5. *Weishapl*, 771 A.2d at 1023–24.

*f.   Count 6: Promissory Estoppel*

As an alternative to his breach-of-contract claim, Count 6 of Ray's Corrected Third Amended Complaint invokes the doctrine of promissory estoppel. ECF No. 83 at ¶¶ 109–12. Like his breach-of-contract claim, Ray bases his promissory-estoppel claim on Lash's representation to Ray that in exchange for his due diligence, Ray "would be compensated a [10%] equity interest in the [P]roperty and any improvements thereon." *Id.* at ¶ 110.

To sustain a claim for promissory estoppel, a plaintiff must show that (1) a promise was made, (2) the promisor reasonably expected the promisee to rely on the promise, (3) the promisee indeed relied on the promise to his detriment, and (4) injustice would result from failure to enforce the promise. *Bender v. Design Store Corp.*, 404 A.2d 194, 196 (D.C. 1979). "[F]or purposes of estoppel, a promise need not be as specific and definite as a contract." *Id.*

The defendants move for summary judgment on Ray's promissory-estoppel claim, arguing that "there is no evidence of any final, binding promise or agreement between the parties," because "any alleged agreement lacked a meeting of minds on all material terms and valid consideration." ECF No. 85-1 at 38. The defendants also argue that Ray's promissory-estoppel claim fails as a matter of law because there is no evidence that Ray relied on that promise to his detriment. *Id.*

Ray does not respond to, let alone acknowledge, any of the defendants' arguments with respect to the promissory-estoppel claim. *See generally* ECF No. 95. This failure to respond, however, is not fatal to Ray. *See Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 506–07 (D.C. Cir. 2016) (holding that a district court may only grant summary judgment "after fully considering the merits of the motion" and cannot simply grant a summary-judgment motion as conceded). As the movants, the defendants still bear the initial burden of identifying those portions of the record that they believe "demonstrate the absence of a genuine issue of material fact." *White,*

206 F. Supp. 3d at 143 (quoting *Celotex Corp.*, 477 U.S. at 322). The Court will thus address each of the defendants' arguments in turn.

First, the defendants argue that "there is no evidence of any final, binding promise or agreement between the parties," because "any alleged agreement lacked a meeting of minds on all material terms and valid consideration." ECF No. 85-1 at 38. But unlike contract formation, promissory estoppel does not require valid consideration. *See Bender*, 404 A.2d at 196. Indeed, the "detrimental reliance factor of promissory estoppel functions to replace . . . the formal requirement[] of . . . consideration." *Id.* And whether there was a "meeting of the minds" *is* genuinely disputed. As Ray stated at his deposition, he believed that Lash and Cohen agreed to compensate him for bringing the Property to them. *See* Ray Dep. 2 at 7, 12. So the defendants' first argument as to why there is no genuine issue of material fact on Ray's promissory-estoppel claim fails.

The defendants also claim that Ray's promissory-estoppel claim fails as a matter of law because there is no evidence of detrimental reliance. ECF No. 85-1 at 38. Viewing the evidence in a light most favorable to Ray, the defendants are correct. *See Holcomb*, 433 F.3d at 895. In his deposition, Ray repeatedly stated that he completed all the acts required to earn his 10% equity interest *before* Lash and Cohen promised to compensate him 10%. *See* Ray Dep. 3 at 16 ("My 10 percent interest in the project was not based on any additional services I might provide from time to time[.] [I]t was based upon what I presented [to] them at that time, and I had no additional requirement of providing services[.]"); Ray Dep. 2 at 15, 18, 23, 27. This means that Ray cannot claim to have relied to his detriment on Lash and Cohen's promise to pay him *before* they made that promise.

Nor can Ray claim to have relied on this promise to his detriment *after* the promise was made. Ray explained in his deposition that after the defendants purchased the Property in 2013, Ray continued to make efforts to add value to the Property. *See* Ray Dep. 2 at 18. He did so because he believed that he was a "10 percent owner" in the Property. *Id.* But as Ray made clear, he "did not expect any compensation for that [work]" and would do it for "free." *Id.* Based on Ray's own representations, then, he cannot claim to have relied to his detriment on Lash and Cohen's promise to compensate him after the promise was made.

The defendants have thus met their burden of showing that there is no genuine dispute as to the essential element of detrimental reliance. *See White*, 206 F. Supp. 3d at 143. Indeed, there is *no* evidence of detrimental reliance. Ray's promissory-estoppel claim thus fails as a matter of law, so Court will grant summary judgment to the defendants on Count 6. *See Celotex Corp.*, 477 U.S. at 322.

### g. *Count 7: Unjust Enrichment*

Next is Ray's claim for unjust enrichment. ECF No. 83 at ¶¶ 109–12. Ray claims that he "conferred" to the defendants "extensive" and "valuable" benefits," including his "presenting the excellent investment opportunity . . . for the purchase and success of the Property (for use as a bus depot or otherwise) before the Property was even listed for sale" and the "extensive due diligence" he performed regarding the Property. *Id.* at ¶ 114. And, Ray alleges, "[i]t would be unjust" to allow the defendants to "retain the[se] extensive benefits" he conferred upon them, without providing him a 10% equity interest in the Property and any improvements thereon. *Id.* at ¶ 117.

A claim for unjust enrichment requires proof that (1) the plaintiff conferred a benefit on the defendant, (2) the defendant retained the benefit, and (3) it would be unjust, given the circumstances, to allow the defendant to retain the benefit. *Falconi-Sachs v. LPF Senate Square,*

*LLC*, 142 A.3d 550, 556 (D.C. 2016). "Unjust enrichment claims typically lie in the absence of a contractual agreement—they provide relief in equity when 'circumstances are such that justice warrants a recovery as though there had been a promise.'" *Id.* (quoting *4934, Inc. v. D.C. Dep't of Emp't Servs.*, 605 A.2d 50, 55 (D.C. 1992)).

Viewing the evidence in the light most favorable to Ray, the Court finds that Ray has failed to make a showing sufficient to establish the first element of his unjust-enrichment claim—that he conferred a benefit on the defendants. Ray says that he conferred a benefit on the defendants because he "brought" a highly lucrative real-estate investment to them and told them about the DCPS lease. ECF No. 95 at 23. But it is not genuinely disputed that four years *before* Ray told Lash about the Property in 2012, Cohen had spoken to the same real-estate broker (Mark Mallus) about buying the same property. Cohen Dep. at 17–18.[10] As Cohen explained at his deposition, his company (Willco) signed a "nondisclosure letter of intent about the property" and agreed with Mallus that Mallus would "represent us [Willco] in the ultimate purchase of it." *Id.* at 18; *see* Mallus Decl. at 2–4; *see also* ECF No. 85-7 (confidentiality agreement signed by Willco on May 16, 2008). During this time, Cohen also learned from Mallus about the DCPS lease on the Property. Cohen Dep. at 18. Contrary to Ray's assertions, then, Cohen knew about the Property and knew about the DCPS lease before Ray conducted his due diligence and told Lash what he had learned.

---

[10] In his "Statement of Genuine Issues of Disputed Material Facts," Ray "denies" that Cohen learned of the Property and the DCPS lease in 2008. ECF No. 95-1 at 2. But Cohen's knowledge in 2008 is not *genuinely* disputed, as Ray points to no "particular parts of materials in the record" showing that Cohen in fact did *not* know about the Property or the DCPS lease in 2008. Fed. R. Civ. P. 56(c)(1)(A). Instead, Ray simply states that there are many "discovery concerns" with the evidence establishing these facts because the relevant documents "were produced to plaintiff almost five (5) months after Defendants received them," which Ray says "further prejudice[ed] him from conducting thorough research on the documents in these paragraphs." ECF No. 95-1 at 2. Complaining about the way in which documents were produced does not establish a genuine dispute about the material facts presented in those documents. *See* Fed. R. Civ. P. 56(c)(1).

It is thus undisputed that Ray did not confer a benefit on the defendants when he told Lash in 2012 that the Property was for sale and that DCPS leased the Property.

Nor did Ray confer a benefit on the defendants when he researched the possibility of building a bus depot on the Property and looked into the possibility of getting legislation passed requiring tour buses to park on the Property. As Ray himself admits, he did not secure legislation requiring tour buses to park on the Property. *See* Ray Dep. 2 at 14–15. Nor did Ray contribute any money toward the purchase of the Property, pay any operational expenses, pay any real estate taxes, or pay insurance costs associated with the Property. *Id.* at 32. Thus, there is no evidence in the record indicating that Ray conferred a benefit on the defendants. So the Court will grant summary judgment to the defendants on Count 7. *See Celotex Corp.*, 477 U.S. at 322.

### h. *Counts 8–10: Quantum Meruit, Constructive Trust, and Declaratory Judgment*

The final three claims of Ray's Corrected Third Amended Complaint seek specific remedies based on the wrongs alleged in Counts 1–7. *See* ECF No. 83 at ¶¶ 120–38. Count 8 seeks "quantum meruit," which is an "equitable remedy" that "permits recovery by a party for services or materials provided—despite the absence of an express contract—if the defendant accepted the goods or services under circumstances which gave reasonable notice that the plaintiff expected payment for them." *Prince Const. Co., Inc. v. D.C. Contract Appeals Bd.*, 892 A.2d 380, 382 n.1 (2006)); *see* ECF No. 83 at ¶¶ 120–26. Count 9 seeks a constructive trust, which is a "remedy for combatting unjust enrichment" and "arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if permitted to retain such interest." *Zanders v. Baker*, 207 A.3d 1129, 1140 (D.C. 2019) (quoting *Gray v. Gray*, 412 A.2d 1208, 1210 (D.C. 1980)); *see* ECF No. 83 at ¶¶ 127–31. And Count 10

seeks a declaratory judgment declaring that Ray is entitled to a 10% equity interest in the Property and any improvements thereon. ECF No. 83 at ¶¶ 132–38; *see* 28 U.S.C. § 2201.

None of these counts pleads a distinct cause of action. Instead, they assert different theories of relief based on the legal harm alleged in Counts 1–7. Accordingly, because the Court will grant summary judgment to the defendants on Counts 1–7, it will likewise grant summary judgment to the defendants on Counts 8–10.

In sum, the Court finds that Ray has failed to make a showing sufficient to establish the existence of the essential elements of his claims for breach of the duty of loyalty, breach of contract, breach of the covenant of good faith and fair dealing, fraudulent misrepresentation, civil conspiracy, promissory estoppel, and unjust enrichment.[11] *Celotex Corp.*, 477 U.S. at 322. And as the remaining counts (Counts 8–10) seek specific remedies based on the harms alleged in Counts 1–7, the Court will likewise grant summary judgment to the defendants on those counts too.

### D. The Court Will Grant CLH LLC's Motion for Partial Summary Judgment on Counts 2 and 3 of its Amended Counterclaim and Will Dismiss as Moot its Motion for Summary Judgment on Count 1 of its Amended Counterclaim

Defendant CLH LLC separately moves for partial summary judgment on Counts 1–3 of its four-count Amended Counterclaim. ECF No. 86. Count 1 seeks a declaratory judgment declaring that (a) Ray's Amended Complaint does not assert a claim affecting an ownership interest in the Property, (b) Ray's inclusion of the $4 million relief figure in the *lis pendens* he filed on the Property was improper, and (c) Ray's filing of the *lis pendens* on the Property was improper under

---

[11] Because the Court agrees with the defendants that these claims fail as a matter of law, the Court need not address the defendants' alternative arguments for summary judgment, including the assertion that many of Ray's claims are time barred and that Ray's alleged breaches of his ethical obligations as an attorney should bar him from recovering any equitable relief. *See* ECF No. 85-1 at 20–21, 39.

D.C. Code § 42-1207(a). *Id.* at ¶ 33. Count 2 asks the Court to order the cancellation and release of the *lis pendens* under D.C. Code § 42-1207(d)(1). *Id.* at ¶¶ 34–37. And Count 3 seeks sanctions under D.C. Code § 42-1207(d)(1) because it claims that Ray's filing of the *lis pendens* was unwarranted by existing law and without evidentiary support. *Id.* at ¶¶ 38–44. CLH LLC does not move for summary judgment on the fourth count of its Amended Counterclaim, which brings a claim for unjust enrichment and asks for the return of two advance payments it made to Ray totaling $190,000. ECF No. 84 at ¶¶ 45–50.

In Ray's combined opposition, he does not address CLH LLC's counterclaims for declaratory relief (Count 1) or sanctions (Count 3). *See* ECF No. 95 at 35. Instead, he responds only to CLH LLC's request for the cancellation of the *lis pendens* (Count 2). *Id.* On that point, Ray argues that all he must do at this posture is show that he has "sufficiently alleged a claim for an interest in real property." *Id.* Thus, Ray says, because he has alleged a claim for an interest in the Property, the Court should not cancel the *lis pendens*. *Id.* at 35–36.

As noted above, Ray's failure to oppose CLH LLC's motion for summary judgment on Counts 1 and 3 does not mean that the Court should automatically grant summary judgment in CLH LLC's favor on these counts. *See Winston & Strawn, LLP*, 843 F.3d at 506–07. Instead, the Court must fully consider the motion on the merits. *See id.* The Court will address each of CLH LLC's counterclaims in turn.

  i. <u>The Court Will Grant Summary Judgment to CLH LLC on Count 2 of its Amended Counterclaim and Will Order the Cancellation of the *Lis Pendens*</u>

After setting forth the legal standards governing CLH LLC's request for cancellation of the *lis pendens*, the Court will explain why cancellation is proper.

*a. Law Governing the Cancellation of a* Lis Pendens

Because this matter is in federal court based on diversity jurisdiction, D.C. substantive law governs. *See* ECF No. 1; *Erie R. Co.*, 304 U.S. at 79–80. Under the common-law doctrine of *lis pendens*, the filing of a lawsuit claiming an interest in real property "prevents change in the status of [the] real property during the pendency of [the] litigation." *Trustee 1245 13th Street, NW No. 608 Trust v. Anderson*, 905 A.2d 181, 184 (D.C. 2006). The *lis pendens* doctrine developed to prevent the "risk that property will be transferred before litigation affecting an interest in it is concluded" by putting third parties on notice of the pending litigation. *McAteer v. Lauterbach*, 908 A.2d 1168, 1171 (D.C. 2006).

In 2000, D.C. codified a *lis pendens* statute, which abrogated the common-law rule that the *mere filing* of a lawsuit claiming an interest in real property serves as a notice of the litigation to third parties. *Trustee 1245 13th Street, NW No. 608 Trust*, 905 A.2d at 185; *see* D.C. Code § 42-1207 ("Notice of pendency of action (*lis pendens*)"). Instead, under D.C. Code § 42-1207(a),

> The pendency of an action or proceeding in either state or federal court in the District of Columbia . . . affecting the title to or tenancy interest in, or asserting a mortgage, lien, security interest, or other ownership interest in real property situated in the District of Columbia does not constitute notice to, and shall not affect a party not a party thereto, unless a notice of the pendency of the action or proceeding is filed for recordation[.]

D.C. Code § 42-1207(a).

Said simply, to put third parties on notice of a lawsuit claiming an interest in real property, the plaintiff who filed that lawsuit must also file for recordation a "notice of the pendency of the action or proceeding." *Id.* Courts often refer to this notice as a "*lis pendens.*" *See Heck v. Adamson*, 941 A.2d 1028, 1029 (D.C. 2008). And as the *lis pendens* statute makes clear, a *lis pendens* "shall be effective *only if* the underlying action or proceeding directly affects the title to . . . or other

ownership interest in real property situated in the District of Columbia." D.C. Code § 42-1207(b) (emphasis added).

If a *lis pendens* has been filed on a property, a "person with an ownership interest in the real property" may file a motion to cancel the *lis pendens* "with the court in which the underlying action or proceeding is pending." D.C. Code § 42-1207(g)(1). The standard applied to resolve a party's motion for cancellation of a *lis pendens* depends on whether the motion was filed during the pendency of the underlying action or after a judgment has been entered. *Compare* D.C. Code § 42-1207(d), *with id.* at § 42-1207(h). On one hand, if the motion for cancellation of a *lis pendens* is brought "prior to the entry of judgment in the underlying action or proceeding," the court "may issue an order canceling" the *lis pendens* if it finds any one of the following:

> **(1)** The notice does not conform to the requirements of subsection (b) of this section;
>
> **(2)**(A) The moving party will suffer irreparable injury if the notice is not cancelled;
>
> > (B) The moving party has demonstrated a substantial likelihood of success on the merits in the underlying action or proceeding;
> >
> > (C) A balance of the potential harms favors the moving party; and
> >
> > (D) The public interest favors cancelling the notice; or
>
> **(3)** The underlying action or proceeding has not been prosecuted in good faith, with all reasonable diligence, and without unnecessary delay.

D.C. Code § 42-1207(h).

If, on the other hand, a party files a motion for cancellation of a *lis pendens* after a "judgment is rendered in the action or proceeding against the party who filed the notice of the pendency," then "the judgment *shall* order the cancellation and release of the notice at the expense

of the filing party as part of the costs of the action or proceeding." *Id.* at § 42-1207(d)(1) (emphasis added).

Under certain circumstances, the property owner may also recover sanctions. Once a "judgment is rendered" in the underlying suit, a court may impose sanctions for the filing of the *lis pendens* "[w]hen appropriate." D.C. Code § 42-1207(d)(1). To decide whether sanctions are appropriate, D.C. courts "assess whether the non-prevailing party's filing of *lis pendens* was for an improper purpose, or was unwarranted by existing law or a frivolous argument for the extension, modification, or reversal of existing law, or was without evidentiary support." *6921 Georgia Ave., N.W., Ltd. P'ship v. Universal Comm. Dev., LLC*, 954 A.2d 967, 973 (D.C. 2008). A court "need not make a finding of bad faith in relation to a party's filing of *lis pendens* in order to exercise its discretion in imposing sanctions under D.C. Code § 42-1207(d)." *Id.*

  *b.  Discussion*

The first step in determining whether the Court should cancel the *lis pendens* Ray filed on the Property is to decide whether judgment has been "rendered" against Ray in the "action or proceeding . . . affecting . . . [an] ownership interest" in the Property. D.C. Code §§ 42-1207(a) & 42-1207(d)(1). The answer to this question matters because the standard applied to resolve a motion for cancellation of a *lis pendens* depends on whether the motion was made before or after a judgment was rendered. *Compare* D.C. Code § 42-1207(d)(1), *with id.* at § 42-1207(h).

If the only claims at issue in this litigation were Ray's claims against the defendants, answering this question would be easy. But after the Court enters summary judgment for the defendants on all of Ray's claims, CLH LLC's claim for unjust enrichment will remain pending. *See* ECF No. 86 (seeking summary judgment only on Counts 1–3 of the Amended Counterclaim). To be sure, CLH LLC's claim for unjust enrichment seeks the return of $190,000 advanced to Ray

and thus does not "directly affect[] the title to . . . or an ownership interest" in the Property. *See* ECF No. 84 at ¶¶ 45–50. But it is unclear from the text of the D.C. *lis pendens* statute whether cancellation of the *lis pendens* is necessary after a court resolves all of the claims that *actually affect* an interest in the Property or whether cancellation is necessary only after *all* the claims in the litigation have been resolved.

On one hand, one might construe the phrase "the action or proceeding" in § 42-1207(d)(1) to include *both* Ray's claims against the defendants *and* CLH LLC's counterclaim against Ray for the repayment of $190,000. Under this reading of the statute, no judgment has been rendered, because CLH LLC's unjust-enrichment claim remains pending. On the other hand, one might construe the phrase "the action or proceeding" in § 42-1207(d)(1) to include *only* Ray's claims against the defendants, because these are the only claims in the litigation that affect an ownership interest in the Property. Under this reading of the statute, a judgment has been rendered, because the Court will enter summary judgment for the defendants on all of Ray's claims today.

The Court need not dissect the text of the D.C. *lis pendens* statute to answer this difficult question because the D.C. Court of Appeals has already spoken on it. In *McNair Builders, Inc. v. 1629 16th Street, L.L.C.*, the plaintiff filed a complaint seeking to enforce a mechanic's lien against the defendant and bringing claims for breach of contract and quantum meruit. 968 A.2d 505, 507 (D.C. 2009). The plaintiff simultaneously filed a *lis pendens*. *Id.* The defendant moved for partial summary judgment on the plaintiff's claim for enforcement of the mechanic's lien, and the district court granted the motion. *Id.* Although the breach of contract and quantum meruit claims were still pending, the trial court ordered the cancellation of the *lis pendens* because of the "invalidity of the

lien to which it related." *Id.* The plaintiff appealed the order cancelling the *lis pendens*.[12] *Id.* On appeal, the D.C. Court of Appeals explained that once the trial court declined to enforce the lien, "cancellation of the *lis pendens* was necessary" because "no action affecting an interest in real property was still pending." *Id.* at 508. That is so, the D.C. Court of Appeals reasoned, because "the two remaining counts in the complaint" (breach of contract and quantum meruit) "sought only monetary damages." *Id.*

The same is true here. Like the remaining claims in *McNair Builders, Inc.*, CLH LLC's counterclaim for unjust enrichment seeks only the return of money, not title to the Property. *See* ECF No. 84 at ¶¶ 45–50. Thus, because the sole outstanding claim in this litigation does not "affect[] an interest" in the Property, the Court's ruling today entering summary judgment for the defendants on all of Ray's claims against them amounts to a "judgment" rendered against Ray in the "action or proceeding" affecting an ownership interest in the Property for purposes of the D.C. *lis pendens* statute. *McNair Builders, Inc.*, 968 A.2d at 507.

Under D.C. Code § 42-1207(d)(1), "[i]f judgment is rendered in the action or proceeding against the party who filed the notice of the pendency, the judgment *shall* order the cancellation and release of the notice at the expense of the filing party as part of the costs of the action or proceeding." D.C. Code § 42-1207(d)(1) (emphasis added). Accordingly, by separate Order, the

---

[12] The D.C. Court of Appeals has held that an order granting a motion to cancel a *lis pendens* is immediately appealable under the collateral order doctrine. *McAteer v. Lauterbach*, 908 A.2d 1168, 1169 (D.C. 2006) (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949)). The same is true under federal law. *See, e.g.*, *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 105 (2009) (recognizing that an interlocutory order is appealable if it "(1) conclusively determines the disputed question; (2) resolves an important issue completely separate from the merits of the action; and (3) is effectively unreviewable on appeal from a final judgment"). Thus, just as a party who filed a *lis pendens* would not be prejudiced by a D.C. court's order cancelling the *lis pendens* before all claims in the litigation have been resolved, neither would a party be prejudiced by that same ruling from a federal court sitting in diversity. In both situations, the party could immediately appeal the order cancelling the *lis pendens*, even if other claims remain outstanding.

Court will grant summary judgment to CLH LLC on Count 2 of its counterclaim, ECF No. 84, and

will order the cancellation and release of the *lis pendens* at Ray's expense.[13]

      ii.    The Court Will Grant Summary Judgment to CLH LLC on Count 3 of its
               Amended Counterclaim and Will Order the Payment of Sanctions

CLH LLC also moves for summary judgment on Count 3 of its Amended Counterclaim,

which asks the Court to award CLH LLC sanctions under D.C. Code § 42-1207(d)(1) in the form

of its attorneys' fees and costs reasonably incurred in connection with bringing its counterclaim.

ECF No. 86; ECF No. 84 at ¶¶ 38–44. Ray does not respond to CLH LLC's request for sanctions

under D.C. Code § 42-1207(d)(1). *See generally* ECF No. 95.

Though the D.C. *lis pendens* statute authorizes courts to award sanctions upon ordering the

cancellation of a *lis pendens*, it gives very little guidance as to when courts should do so. *See* D.C.

Code § 42-1207(d)(1) (authorizing courts to award sanctions "[w]hen appropriate"). Generally

speaking, when deciding whether sanctions are appropriate under § 42-1207(d), D.C. courts look

to "whether the non-prevailing party's filing of *lis pendens* was for an improper purpose, or was

unwarranted by existing law or a frivolous argument for the extension, modification, or reversal

of existing law, or was without evidentiary support." *6921 Georgia Avenue, N.W., Ltd. P'ship*,

954 A.2d at 973. A court "need not make a finding of bad faith in relation to a party's filing of *lis*

---

[13] Ray's argument as to why the Court should not order the cancellation of the *lis pendens* fundamentally misunderstands the Court's inquiry at this posture. He says that the inquiry on this issue is whether he has "sufficiently alleged a claim for interest in real property." ECF No. 95 at 35. If the Court were merely assessing the validity of the *lis pendens* under D.C. Code § 42-1207(b), which provides that a *lis pendens* is valid only if "the underlying action or proceeding directly affects the title to . . . or other ownership interest in real property," the allegations in Ray's pleading would be relevant. Here, however, the question before the Court is whether cancellation of the *lis pendens* is proper. Ray's argument in his defense is thus inapposite.

*pendens* in order to exercise its discretion in imposing sanctions under D.C. Code § 42-1207(d)." *Id.*

CLH LLC argues that Ray's filing of the *lis pendens* was unwarranted by existing law because it did not conform with the requirements set forth in D.C. Code § 42-1207(a). ECF No. 107 at 3–4. Specifically, CLH LLC argues that Ray's filing was improper because there was no action or proceeding "affecting the title to . . . or other ownership interest in real property." *Id.* at 4 (quoting D.C. Code § 42-1207(a)). Instead, CLH LLC argues, Ray claims an ownership interest in CLH LLC as the entity owning the Property, not in the Property itself. *Id.* And under D.C. law, CLH LLC argues, a transferrable interest in an LLC is *personal* property, not *real* property. *Id.* (citing D.C. Code § 29-805.01). Although CLH LLC is correct that Ray testified at his deposition that he has an interest in CLH LLC as the entity owning the Property, Ray *also* repeatedly testified that he has a 10% equity interest in the Property itself. *See* Ray Dep. 1 at 21; Ray Dep. 2 at 7, 9, 11. The Court is thus unpersuaded by CLH LLC's first argument.

There is, however, undisputed evidence showing that Ray's representation in the *lis pendens* that his underlying claim seeks $4 million was without evidentiary support. Showing why this is so requires a brief detour into the relevant procedural history. Ray initially filed his complaint against the defendants in the Superior Court for the District of Columbia on August 19, 2012. *See* Compl. at 2. After the suit was removed to federal court, Ray filed a *lis pendens* on the Property. *See* ECF No. 84-1 at 2 (*lis pendens* filed on October 29, 2019). That *lis pendens* stated that the amount of Ray's claim in the underlying suit against the defendants was "$4,000,000.00, plus a ten percent equity interest in 1345 New York Ave, NE, Washington, DC." ECF No. 84-1 at 2. As Ray's complaint initially sought $4 million in punitive damages based on a claim for fraud, the $4 million figure in the *lis pendens* was presumably based on the damages sought for fraud.

Ray then filed an Amended Complaint, which omitted the claim for fraud and corresponding request for $4 million in punitive damages. ECF No. 6. After amending his complaint, Ray also filed an amended *lis pendens*. *See* ECF No. 86-12 at 2–4. The amended *lis pendens* stated that the amount of the claim in the underlying litigation was "4,000,000.00, which is based upon Ray's right to a 10% equity interest in the real property located at 1345 New York Ave, NE, Wash. DC and its improvements thereon[.]" *Id.* at 2 (amended *lis pendens* filed on December 20, 2019). In other words, Ray's amended *lis pendens* sought only $4 million, not $4 million *plus* a 10% interest in the Property.

Although Ray's first *lis pendens* accurately represented the amount of relief sought in the underlying suit against the defendants, his amended *lis pendens* did not. Ray's amended *lis pendens* represented that his underlying claim against the defendants sought $4 million, which he said was based upon his right to a 10% equity interest in the Property. *See* ECF No. 86-12 at 2. But his operative complaint at the time (the Amended Complaint) did *not* request $4 million. *See* ECF No. 6. It requested a "ten percent equity interest in the Property and any improvements thereon." *Id.* at 25; *see id. at* 26.

It is undisputed that CLH LLC purchased the Property for approximately $8.4 million in 2013. ECF No. 86-2 at ¶ 30. Though it is unclear from Ray's deposition whether he expected to be compensated with a 10% equity interest in the Property or a 10% interest in CLH LLC as the entity owning the Property, either financial interest would net Ray approximately $840,000 at the time of the purchase in 2013. *See* Ray Dep. 1 at 21; Ray Dep. 2 at 7, 9, 11. The value of his share surely could have increased from 2013 until his filing of the amended *lis pendens* in 2019, but there is no evidence supporting Ray's representation in his amended *lis pendens* that he sued the

defendants for $4 million, which amounts to a 376% increase from a 10% interest in the Property at the time of the purchase.

Thus, because the Court finds that there are no genuine issues as to the material fact of whether Ray's representation in his amended *lis pendens* that he sued the defendants for $4 million was without evidentiary support, the Court will grant summary judgment to CLH LLC on its counterclaim for sanctions. *See 6921 Georgia Avenue, N.W., Ltd. P'ship*, 954 A.2d at 973; *see also Bloom v. Beam*, 99 A.3d 263, 268 (D.C. 2014) ("An award of attorney's fees can be an appropriate sanction under the *lis pendens* statute.").

### iii. The Court Will Dismiss as Moot CLH LLC's Motion for Summary Judgment on Count 1 of its Amended Counterclaim

The last claim at issue in CLH LLC's partial motion for summary judgment is its claim for declaratory relief. *See* ECF No. 86. Count 1 of CLH LLC's Amended Counterclaim requests a declaratory judgment declaring that (a) "the Amended Complaint does not assert a claim 'affecting the title to or tenancy interest in, or asserting a mortgage, lien, security interest, or other ownership interest' in the Property"; (b) that "Ray's inclusion of the $4 million relief figure in the *Lis Pendens* was improper"; and (c) that "Ray's filing of the *Lis Pendens* was improper and disallowed under D.C. Code § 42-1207(a)." ECF No. 84 at ¶ 33 (emphases added). Though Ray opposes CLH LLC's request for cancellation of the *lis pendens*, he does not respond to CLH LLC's separate request for declaratory relief. *See generally* ECF No. 95.

Before addressing the merits of CLH LLC's request, and although neither party addresses the issue, the Court first must assure itself that it has jurisdiction to consider CLH LLC's request for declaratory relief. *See Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (recognizing that the Declaratory Judgment Act "is not an independent source of federal jurisdiction"); *Floyd v. District*

*of Columbia*, 129 F.3d 152, 155 (D.C. Cir. 1997) ("[W]e have an independent obligation to assure ourselves of jurisdiction, even where the parties fail to challenge it.").

In a federal suit based on diversity jurisdiction, federal law governs the question whether a federal court may grant declaratory relief. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937) (recognizing that the "operation of the Declaratory Judgment Act is procedural only"); *Erie R. Co.*, 304 U.S. at 79–80. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The phrase "actual controversy" in the Declaratory Judgment Act refers to the types of "cases" and "controversies" that are justiciable under Article III. *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 126–27 (2007). Thus, a party's request for declaratory relief is justiciable when there is a controversy that is "definite and concrete, touching the legal relations of parties having adverse legal interests" and of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Aetna Life Ins. Co.*, 300 at 240–41; *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

To determine whether a request for a declaratory judgment has become moot, courts apply the same mootness principles as with other claims. *See Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009). Even if a claim for declaratory relief presented a controversy with sufficient immediacy to warrant the issuance of a declaratory judgment at the *outset* of the lawsuit, the claim becomes moot if the "challenged conduct ceases" without a reasonable expectation of recurrence such that "it becomes impossible for the court to grant any effectual relief." *Del Monte Fresh Produce Co.*, 570 F.3d at 321 (quoting *United States v. Philip Morris USA, Inc.*, 566 F.3d 1095, 1135 (D.C. Cir. 2009)).

At the time CLH LLC filed its counterclaim seeking declaratory relief, there was a definite and concrete controversy between the parties. Ray filed a *lis pendens* on real property owned by CLH LLC, and CLH LLC wanted that *lis pendens* released. *See* ECF No. 84; ECF No. 86-21 at 2–4. When CLH LLC filed its counterclaim, declaring that Ray's Amended Complaint did not assert a claim affecting the title to or any ownership interest in the Property would have had immediate, real-world consequences. Ray could have used that declaration as the basis for seeking cancellation of the *lis pendens* under D.C. Code § 42-1207(h)(1). Under that section of the *lis pendens* statute, a court can order the cancellation of a *lis pendens* before judgment is rendered if the *lis pendens* does not "directly affect[] the title to or . . . other ownership interest in real property." D.C. Code § 42-1207(h)(1); *see id.* at § 42-1207(b).

The same can be said for CLH LLC's request for a declaration that the $4 million relief figure in the *lis pendens* was improper. *See* ECF No. 84 at ¶ 33. CLH LLC could also use that declaration as the basis for seeking an order cancelling the *lis pendens* under D.C. Code § 42-1207(h)(1). That section of the *lis pendens* allows a court to order the cancellation of a *lis pendens* before judgment is rendered if the *lis pendens* does not state the "[a]mount of the claim asserted or the nature of other relief sought." D.C. Code § 42-1207(h)(1); *see id.* at § 42-1207(b)(6). And at the time Ray filed his amended *lis pendens*, the operative complaint in his underlying suit did not seek $4 million in relief. *See* ECF No. 6 at 25–26. Thus, CLH LLC could have used a declaration that the inclusion of the $4 million figure on his amended *lis pendens* was improper to seek cancellation of the *lis pendens* for failing to comply with § 42-1207(b).

But now that the Court has held that it will order the *lis pendens* cancelled and will order Ray to pay CLH LLC sanctions for the improper filing, granting CLH LLC's request for declaratory relief would have no immediate, real-world effect. The challenged conduct (i.e., Ray's

refusal to release the *lis pendens*) has ceased and there is no reasonable expectation of recurrence. *See Del Monte Fresh Produce Co.*, 570 F.3d at 321. CLH LLC does not claim, for example, that Ray will initiate a new lawsuit against it and again file a *lis pendens* on the Property. Nor does CLH LLC identify any way in which issuing the declaration it seeks would have some immediate, real-world effect on the title to the Property or on the recourse CLH LLC might have against Ray after the cancellation and release of the *lis pendens*. Thus, because CLH LLC's request for declaratory relief is moot, the Court will dismiss CLH LLC's partial motion for summary judgment on Count 1 of its Amended Counterclaim for lack of jurisdiction.

## IV. CONCLUSION

In sum, for the reasons explained above, the Court will **DENY** Ray's motion to reconsider, ECF No. 89, **DENY** Ray's motion for an emergency hearing and to compel the production of CLH LLC's unredacted tax records, ECF No. 90, and **DENY IN PART** and **DISMISS AS MOOT IN PART** Ray's motion to strike the expert report of Professor Frisch and preclude him from testifying as an expert at trial, ECF No. 91. The Court will further **GRANT** the defendants' motion for summary judgment, ECF No. 85, on all ten counts of Ray's Corrected Third Amended Complaint, and will **GRANT IN PART** and **DISMISS AS MOOT IN PART** CLH LLC's partial motion for summary judgment on Counts 1–3 of its Amended Counterclaim, ECF No. 86.

A separate Order consistent with this Memorandum Opinion shall issue.

Date: August **20** 2021

Hon. Royce C. Lamberth
United States District Judge