UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOHN L. RAY**, *Plaintiff*, v. **CLH NEW YORK AVE, LLC**, *et al.*, *Defendants*. | Case No. 19-cv-2841-RCL |
| **CLH NEW YORK AVE, LLC**, *Counterclaim Plaintiff*, v. **JOHN L. RAY**, *Counterclaim Defendant*. | Case No. 19-cv-2841-RCL |

**MEMORANDUM OPINION**

Plaintiff John Ray unsuccessfully sued defendants Richard Cohen, Tony Lash, Donnie Hinton, and CLH New York Ave, LLC ("CLH") for breach of an oral agreement. Ray alleged that Cohen, Lash, and Hinton promised to give him 10% equity in real property they owned at 1345 New York Avenue N.E., Washington, D.C. ("the Property"), then reneged on that promise. Because of his alleged interest in the Property, Ray filed a *lis pendens* against it. *See* ECF No. 9 at 13. Defendant CLH, an LLC formed by Cohen, Lash, and Hinton, counterclaimed and alleged that the filing of the *lis pendens* was improper. ECF No. 9 at 12–17. The Court granted summary judgment for defendants on all of Ray's claims and two of the three counts in their counterclaim and ordered the payment of sanctions to CLH based on the improper filing of the *lis pendens*. *Ray*

1

*v. CLH New York Ave, LLC*, No. 19-cv-2841 (RCL), 2021 WL 3709932, at *22 (D.D.C. Aug. 20, 2021). The sanctions are to be "in the amount equal to attorneys' fees and costs [that CLH] reasonably incurred in bringing its counterclaim." ECF No. 109 at 2.

CLH now moves for attorneys' fees and costs. CLH Mot., ECF No. 120. Ray opposed the motion, Ray Opp'n, ECF No. 130, and CLH replied, CLH Reply, ECF No. 134. Upon consideration of the parties' filings (including documentation submitted in support of CLH's request), applicable law, and the entire record, the Court will **GRANT IN PART** and **DENY IN PART** CLH's motion and will award CLH $972,959.09 in costs and attorneys' fees.

## I. BACKGROUND

The Court will begin by discussing Ray's suit and CLH's counterclaim, as an understanding of the procedural history of the case is relevant to what types of fees CLH incurred in bringing its counterclaim. Ray alleged that he discovered that the Property was a "lucrative real-estate investment opportunity" to develop a tour bus depot in 2012. *Ray*, 2021 WL 3709932, at *1, 7. He then claimed he brought this investment opportunity to defendant Lash, who, along with Cohen and Hinton, orally promised him 10% equity in the property based on his discovery and due diligence. *Id*. at *1. However, the parties never memorialized any agreement on paper. *Id.*

Ray initiated his suit in 2019 and at the same time filed a *lis pendens* against the Property. *Id.* Simply put, a *lis pendens* is a notice of the "the pendency of the action or proceeding" filed with the D.C. Recorder of Deeds that "put[s] third parties on notice of lawsuit claiming an interest in real property." *Id.* at *19. A *lis pendens* necessarily creates difficulty in selling property—in essence, it serves as a cloud on the title. Because of this, D.C. law[1] allows a court to grant sanctions

---

[1] Because this Court is sitting in diversity, it applies the District of Columbia's substantive law. *Ray*, 2021 WL 3709932, at *11.

when a "non-prevailing party's filing of *lis pendens* was for an improper purpose, or was unwarranted by existing law, modification, or reversal of existing law, or was without evidentiary support." *Id.* at *22 (quoting *6921 Georgia Avenue, N.W., Ltd. P'ship v. Universal Cmty. Dev., LLC*, 954 A.2d 967, 973 (D.C. 2008)). CLH filed a counterclaim requesting cancellation of the *lis pendens* and sanctions. Am. Countercl. Compl., ECF No. 84.

This Court granted summary judgment to the defendants on all ten of Ray's claims. Specifically, the Court found that Ray had "failed to make a showing sufficient to establish the existence of the essential elements of his claims for breach of the duty of loyalty, breach of contract, breach of the covenant of good faith and fair dealing, fraudulent misrepresentation, civil conspiracy, promissory estoppel, and unjust enrichment" as a matter of law. *Ray*, 2021 WL 3709932, at *18. And because judgment was rendered against Ray—who had filed the *lis pendens*—the Court ordered cancellation of the *lis pendens*. *Id.* at *20.

Finally, the Court awarded sanctions after finding that Ray filed the *lis pendens* "without evidentiary support." *Id.* at *22. When Ray initially filed the *lis pendens*, he stated the amount of the underlying suit against the defendants was "$4,000,000.00, plus a ten percent equity interest in [the Property]." ECF No. 84-1 at 2. This matched his initial complaint, which sought both an equity interest in the Property and $4 million in punitive damages for fraud. *Ray*, 2021 WL 3709932, at *23. He then filed an Amended Complaint that "omitted the claim for fraud." *Id.* (citing ECF No. 6). But when Ray amended his *lis pendens*, he maintained that the amount of the claim of the underlying suit was still $4 million, based on his "right to a 10% equity interest" in the Property. *Id.* (quoting ECF No. 86-12). "In other words, Ray's amended *lis pendens* sought only $4 million, not $4 million *plus* a 10% interest in the Property." *Id.*

3

Why does this matter? Because if 10% of the Property was worth $4 million, then the property itself would be worth $40 million—a jaw-dropping 376% increase from the undisputed price it was purchased for in 2013 ($8.4 million). *Ray*, 2021 WL 3709932, at *23. The Court found that the representation of the $4 million dollar claim in the amended *lis pendens* was without evidentiary support and granted summary judgment in CLH's favor on its counterclaim for sanctions. *Id.* The amount of sanctions—the attorneys' fees reasonably expended in bringing the counterclaim—are now at issue.

## II.   LEGAL STANDARD

A district court generally "enjoys substantial discretion in making reasonable fee determinations." *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993). "[A] reasonable fee is one that is 'adequate to attract competent counsel, but that does not produce windfalls to attorneys.'" *West v. Potter*, 717 F.3d 1030, 1033–34 (D.C. Cir. 2013) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). Initially, reasonable attorneys' fees are calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum*, 465 U.S. at 888. A strong presumption exists that the product of these two variables—the "lodestar figure"—represents a "reasonable fee." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

The moving party bears the initial burden of proving that the requested amount of attorneys' fees is reasonable. *See, e.g., Commodity Fut. Trad. Comm'n v. Trade Exch. Network Ltd.*, 159 F. Supp. 3d 5, 8 (D.D.C. 2015). But "[c]ourts have discretion to adjust the amount requested in light of specific objections by the opposing party." *Id.* And the Court is empowered to reduce awarded fees if "a large number of entries suffer from one or more deficiencies." *DL v. District of Columbia*, 256 F.R.D. 239, 245 (D.D.C. 2009).

### III.   ANALYSIS

As set forth below, the Court finds that CLH is entitled to fees and costs in the total amount of $972,959.09. CLH requests $108,976.85 in costs, which the Court will grant.[2] CLH also requests $1,079,977.80 in attorneys' fees. To determine the proper attorneys' fee award, the Court will first determine which claimed work hours were reasonably expended. Then, the Court will determine the reasonable rate for CLH's counsel's services. The Court will, finally, calculate the lodestar amount by multiplying these two numbers. But because of certain deficiencies, the Court will reduce the amount of attorneys' fees requested by 20% and will award $863,982.24 in attorneys' fees.

**A. The Number Of Hours Reasonably Expended**

When granting attorneys' fees, the hours expended in litigation must be reasonable under the circumstances. *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983). Claimed hours that were not reasonably expended must be deducted when calculating the lodestar. *Id.* And even "[a]fter the Court has subtracted out non-compensable time, the Court can conduct further across-the-board percentage reductions as appropriate when a large number of entries suffer from one or more deficiencies." *DL*, 256 F.R.D. at 245.

Several concepts guide the Court in calculating reasonably expended hours. Attorneys must keep "contemporaneous, complete and standardized time records" that "accurately reflect the work done by each attorney." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir 1982). While the "exact number of minutes spent" is not necessary, a fee application must be "sufficiently detailed to permit the District Court to make an independent determination

---

[2] In a single sentence, Ray appears to oppose recovery for data-hosting costs. Ray Opp'n 6. He argues that "no source of authority is presented for this reques[t]." *Id.* As CLH points out, the source of authority for this request is the Court's order granting attorneys' fees and costs. CLH Reply 9.

whether . . . the hours claimed are justified." *Id.* That means if an attorney's time entries are so "vaguely generic" that the Court cannot derive whether the claimed hours were reasonably expended, the movant has not met his or her burden and the hours must be excluded. *Doe I v. Exxon Mobile Corp.*, No. 01-cv-1357 (RCL), 2022 WL 1124902, at *3 (D.D.C. Apr. 14, 2022) (quoting *Cobell v. Norton*, 407 F. Supp. 2d 140, 158 (D.D.C. 2005)). Finally, the "requested hours must reflect considered billing judgment." *Id.* "[E]xcessive, redundant, or otherwise unnecessary" hours must be excluded. *Hensley*, 461 U.S. at 434. CLH filed 170 pages of contemporaneous billing records, which this Court will use for its analysis. *See* ECF Nos. 121-5, 121-6, 121-7.

Before applying these concepts, the Court must first clarify which hours are even at issue. CLH brought three Counts in its counterclaim relevant here. Counts 1 and 2 comprised CLH's counterclaim against Ray, asking for cancellation of the *lis pendens*, and declaratory relief. Am. Countercl. Compl. ¶¶ 27–37. Count 3 consisted of the request for sanctions that this Court subsequently granted. *Id.* ¶¶ 38–44. In its order, the Court granted CLH sanctions "in the amount equal to its attorneys' fees and costs reasonably incurred in bringing its counterclaim." ECF No. 109 at 2. But now, Ray attempts to draw lines between the different counts of the counterclaim. He argues that he was sanctioned only because he submitted an unsupported *lis pendens*, and thus that CLH should be compensated only for hours spent litigating Count 3: the request for sanctions. Ray Opp'n 7. According to Ray, CLH should not be compensated for other "interrelated" claims, like Counts 1 and 2. *Id.*

Ray's argument is meritless and confuses this Court's order. D.C.'s *lis pendens* statute states in relevant part:

> (d)(1) If judgment is rendered in the action or proceeding against the party who filed the notice of the pendency, the judgment shall order the cancellation and release of the notice at the expense of the filing

6

>party as part of the costs of the action or proceeding. When appropriate, the court may also impose sanctions for the filing. . . .

D.C. Code § 42-1207(a). To succeed in an award for sanctions under this statute, a litigant must necessarily prevail against the party who filed the *lis pendens*. Any counsel would have trouble accurately disambiguating time spent on Counts 1, 2, or 3. Even if they could, however, it would be unnecessary. The Court made no such distinction between the counts in its award of attorneys' fees. This Court granted CLH the attorneys' fees and costs incurred in *bringing its counterclaim*: Counts 1, 2, and 3. Time spent litigating Counts 1 and 2 of the counterclaim were plainly included in this award.

Ray's argument about block billing, on the other hand, does persuade the Court. Ray argues that the fee petition is deficient because it includes several instances of impermissible block billing. Ray Opp'n 9, 16. Block billing occurs when time entries "aggregate the tasks performed into single entries without an indication as to how much time counsel spent on each individual task." *Doe I*, 2022 WL 1124902, at *5. Block billing "make[s] it impossible for the court to determine, with any degree of exactitude, the amount of time billed for a discrete activity" which leaves the court "to estimate the reduction to be made because of such insufficient documentation." *In re Olson*, 884 F.2d 1415, 1428–29 (D.C. Cir. 1989). "Some tasks—like research and writing—might necessarily be conducted simultaneously" and are thus appropriately billed together. *Doe I*, 2022 WL 1124902, at *5. Lawyers need not labor over every six-minute increment of how they spend their time. *See Smith v. District of Columbia*, 466 F. Supp. 2d 151, 157-58 (D.D.C. 2006). But "wholly distinct tasks" should not be included in one entry without a breakdown of the time spent on each. *Doe I*, 2022 WL 1124902, at *5.

The submitted time entries are replete with instances of block billing. For example, a roughly six-hour time entry covers both "research . . . related to plaintiff's motion for

reconsideration" and "calendaring deadlines and organizing case files." *See* ECF 121-7 at 4 (Guy Graney entry for January 28, 2021). Another entry for five hours covers a "call with client to discuss discovery and strategy," another "call with [Venable counsel]," time spent "work[ing] up notices of deposition and correspondence to opposing counsel" along with "attention to search for expert witnesses," and "work on compiling of documents and narrative for legal ethics expert." *See* ECF No. 121-6 at 25 (Moxila Upadhyaya entry for May 1, 2020); *see also id.* at 5 (Moxila Upadhyaya entry for January 28, 2020); *id*. at 17 (Guy Graney entry for March 24, 2020). While block billing is "most egregious when the fee petitioner has only prevailed on a portion of their claims," *DL*, 256 F.R.D. at 245, "extensive block billing is" impermissible "even where a plaintiff is totally successful, as it interferes with the Court's ability to evaluate the reasonableness of billed hours spent on specific motions or filings." *Hernandez v. Chipotle Mexican Grill, Inc.*, 257 F. Supp. 3d 100, 112 (D.D.C. 2017). Given the amount of block billing here, the Court will apply a 20% across-the-board deduction from the attorneys' fees awarded.

Beyond block billing, Ray raises other purported deficiencies. CLH reports 1,400 hours expended. He maintains that 1,400 hours is exorbitant given the simplicity of the case. Ray Opp'n 18. According to Ray, this number of hours is indicative of either overstaffing or impermissible duplication. *Id.* While the Court agrees that 1,400 is a significant amount of time, this Court disagrees that the case was simple. Succeeding on Count 2 of CLH's counterclaim, for example, required prevailing against Ray on the ten counts in his complaint—no easy task. As CLH points out, they had to "address Ray's six different complaints; nine discovery motions; prepare for and participate in ten depositions over the course of fourteen days; address Ray's four separate attempts to extend fact discovery by a total of six months; deal with Ray's post-discovery strategy to try to avoid or delay responding to dispositive motions by making belated arguments about discovery;

8

. . . and ultimately brief their dispositive motions twice after Ray moved to file second and third amended complaints close to the end of the discovery period." CLH Reply 17–18 (citations omitted).

As further evidence of duplication or overstaffing, Ray points to 219 entries that seek compensation for conversations between opposing counsel, co-counsel, and clients and argues that courts have reduced hours for "excessive conferencing." *Id.* at 20–21. Ray also gestures to entries where he alleges multiple attorneys worked on "the same activity." *Id.* at 21. These arguments are without merit. While Ray boldly contends that "[t]ime spent talking about the case on the phone with counsel cannot be billed by multiple attorneys for the same firm," Ray Opp'n 19–20, he provides no supporting case law for this notion.[3] Similarly, the fact that three attorneys each worked on the reply brief in support of summary judgment on February 19, 2021, is not indicative of "duplicative work." Ray Opp'n 20. A dispositive motion may well require the work of more than one attorney. As another purported example of duplicative work, Ray alleges that Brian Schwalb and Moxila Upadhyaya both "prepar[ed] for and attend[ed] a 30(b)(6) deposition" on January 13, 2021. *Id.* at 21. But only Upadhyaya attended the deposition[4] and Schwalb helped Upadhyaya prepare the day before for less than 30 minutes, *id*. This is hardly duplicative work.

To sum up, the Court finds that the time expended here was reasonable and included in the scope of the sanctions award. However, the Court will apply a 20% across-the-board deduction to the requested fees given the instances of impermissible block billing.

---

[3] As an aside, the Court will note that the number of entries that mention correspondence combined with the impermissible block billing does raise questions about *exactly* how much time was billed for communication between lawyers—another reason why block billing makes a court's job more difficult.

[4] On January *14*, 2021. *See* ECF No. 121-7 at 3.

B. **Prevailing Rate for Counsel's Service**

The second step of an attorneys' fees inquiry requires this Court to determine whether the hourly rates charged by counsel are reasonable. In the D.C. Circuit, an attorney's "usual billing rate is presumptively the reasonable rate, provided that this rate is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Kattan ex rel. Thomas v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993) (quoting *Blum*, 465 U.S. at 896 n.11). Courts mainly consider three factors when determining whether an hourly rate is reasonable: the attorneys' billing practices, the attorneys' "skill, experience, and reputation," and the "prevailing market rates" in the community. *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995).

Counsel at Venable LLP charged at the following hourly rates[5]:

| Name | 2019 | 2020 | 2021 |
|---|---|---|---|
| Brian Schwalb | $865 | $955 | $1010 |
| Moxila Upadhyaya | $617 | $662 | $693 |
| Guy Graney | $414 | $482 | $536 |
| Tiffany Williams | $459 | --- | --- |
| Jana Gibson (Paralegal) | $311 | --- | --- |

Counsel represent that their requested rates are customary. CLH Mot. 15. In support, they note that their rates are in line with the updated *Laffey* Matrix. *Id.* "District of Columbia courts generally accept the Matrix from *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 16 (D.C. Cir.

---

[5] Counsel at Venable LLP provided CLH courtesy discount rates, which are reflected in this chart. *See* ECF No. 121-9.

1984), in its updated form, as an accurate reflection of reasonable hourly rates of comparable attorneys in the District." *Doe I*, 2022 WL 1124902, at *3 (D.D.C. Apr. 14, 2022). But Ray argues that the *Laffey* Matrix is inapplicable here because the litigation was "not *complex*" federal litigation. Ray Opp'n 8, 18.

Ray's argument about complexity does not persuade the Court. However, CLH did not rely solely on the *Laffey* Matrix to prove that its hourly rates were reasonable. Instead, CLH's counsel submitted a sworn affidavit indicating that the rates were reasonable and consistent with typical Venable hourly rates, ECF No. 121 ¶ 14, the Washington, D.C. legal market generally, *id.* ¶ 15, and even the hourly rates charged by plaintiff Ray's own firm, CLH Mot. 15. As Ray points out, "the appropriate billing rate in this matter would align with that in which local attorneys would charge for undertaking the same work." Ray Opp'n 18. But Ray has failed to counter any of CLH's other evidence indicating Venable's rates are reasonable. This Court therefore finds that Venable's hourly rates are reasonable.

Ray makes one final argument, that attorneys often billed "administrative tasks" such as "reading correspondence and doing Westlaw research" at the rate of an attorney, and that such tasks should be billed at the rate of a paralegal. Ray Opp'n 9. As support for this argument, for example, he cites associate Guy Graney billing for "legal research" in January 2021. *Id.* at 9 n.6. But, like many of his arguments, Ray lacks legal support for his position that only paralegals can perform legal research. *Id.* Moreover, the elementary foundation of lawyering includes legal research on the relevant legal issues, warranting attorney billing rates. *See Miller v. Holzmann*, 575 F. Supp. 2d 2, 43 (D.D.C. 2008) ("[R]egardless of an attorney's level of expertise, the pertinent authorities need to be referenced and researched when briefing or considering the legal issues in the case.").

11

### C. The Court Will Not Reconsider Its Decisions on Summary Judgment or Sanctions

In his reply, Ray asks the Court to reconsider its award of sanctions in the summary judgment opinion. Ray Opp'n 2–5. The Court declines for three reasons. First, the response to a motion for attorneys' fees—that have already been granted—is an inappropriate procedural posture to relitigate a summary judgment decision or a sanctions award. Ray could have moved for reconsideration when the Court originally awarded sanctions. He did not. Second, Ray's argument is nearly indecipherable. He spends a significant amount of time arguing that this Court focused on the wrong operative complaint (it did not) without explaining why that issue was relevant. Third, the arguments he does properly lay out can be easily rejected. Ray appears to argue that because he filed an Initial Disclosure Statement with defendants (not this Court) that stated, without support, that he believed the value of the Property to be between $35 to $40 million, somehow that constitutes evidentiary support as to the Property's values. It does not. Ray's personal beliefs are not evidence. The Court, accordingly, will not reconsider these prior decisions.

### D. The Court Will Not Grant Fees On Fees

CLH also submitted a supplemental fee request for fees incurred in preparing its motion for attorneys' fees. ECF Nos. 134-3, 134-4, 134-5. The general rule in the D.C. Circuit is that "the court *may* award additionally fees for 'time reasonably devoted to obtaining attorneys' fees.'" *Kaseman v. District of Columbia*, 444 F.3d 637, 641 (D.C. Cir. 2006) (quoting *Envtl. Def. Fund v. EPA*, 672 F.2d 42, 62 (D.C. Cir.1982)) (emphasis added). But the supplemental time entries submitted here include matters reach beyond the bounds of an appropriate fee award. CLH attempts to recover for tasks such as "research into *lis pendens* removal," ECF No. 131-3 at 3 (Moxila Upadhyaya entry for August 25, 2021), dealing with an "erroneous notice of appeal," *id.* (Moxila Upadhyaya entry for August 31, 2021), and drafting a "motion for court hearing," *id.* at 13 (Guy Graney entry for October 15, 2021). CLH made no colorable attempt to differentiate the

counsel's time spent litigating attorneys' fees from other, non-fee-related tasks. The Court declines to do so for them. Because the Court does not find that these supplemental entries reflect time "reasonably devoted to obtaining attorneys' fees," the Court will not award attorneys' fees for this supplemental time.

### IV.   CONCLUSION

Based on the foregoing, the Court will **GRANT IN PART** and **DENY IN PART** CLH's motion for attorneys' fees and costs.[6] CLH is entitled to the following costs:

| Type of Cost | Amount |
|---|---|
| Attorneys' Fees | $863,982.24 |
| Commercial Messenger and Delivery Services | $134.42 |
| Data Hosting Fees | $39,802.80 |
| eDiscovery Processing Fees | $2,809.00 |
| Filing Fees | $453.26 |
| Legal Research and Westlaw Fees | $28,374.07 |
| Document Production | $311.00 |
| Deposition Transcript Expenses | $3,560.95 |
| Dataprise Technical Consulting Fees | $1,485.00 |
| Michael Frisch Expert Witness Fee | $15,780.00 |
| SLR Reporting Transcription Expenses | $3,904.65 |
| Planet Depo Transcription Expenses | $12,361.70 |
| **TOTAL:** | **$972,959.09** |

---

[6] Note that this memorandum corrects a clerical error from the previously filed memorandum [135], which this Court will strike.

A separate order will be filed consistent with this memorandum.

Date: June 29, 2022

Hon. Royce C. Lamberth
United States District Judge